# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REVIEW OF SECURITY AMOUNT

## NO. 03-09-00576-CV

**Appellants, Stanley Shook and Patrick Jaehne// Cross-Appellants,
Terry Walden and Joy Walden**

**v.**

**Appellees, Terry Walden and Joy Walden// Cross-Appellees,
Stanley Shook and Patrick Jaehne**

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
## NO. 26,747, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING

## O P I N I O N

Appellant Stanley Shook has filed a motion for review of a December 9, 2009 district court order determining the amount of security required for him to suspend enforcement of the district court's judgment pending this appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(d) (West 2008); Tex. R. App. P. 24.4. The primary issues in dispute are whether section 52.006, subsection (a), of the civil practice and remedies code, as amended in 2003, requires Shook to secure the amount of attorney's fees and prejudgment interest awarded in the district court's judgment. Also at issue is whether Shook sufficiently secured the costs awarded in the judgment and post-judgment interest. We conclude that Shook is not required to secure the amount of attorney's fees and that he sufficiently secured costs. However, we hold that Shook

is required to secure the amount of prejudgment interest awarded in the judgment and furnish additional security for post-judgment interest.

**BACKGROUND**

The underlying dispute involves two contracts between S&J Endeavors, L.L.C. (S&J) and appellees Terry and Joy Walden whereby S&J sold the Waldens real property (the "Land Contract") and agreed to construct a house on the property (the "Residential Construction Contract"). Of relevance to this proceeding, a jury found that S&J had breached the Residential Construction Contract and that the Waldens had incurred $80,000 in damages resulting from that breach. The sole element of damages submitted to the jury on that claim was "[t]he difference, if any, of the value of the house as it was received and the price The Waldens paid for it . . . at the time the title was transferred." The jury also found that S&J was the alter ego of both appellant Shook and appellant Patrick Jaehne and had been operated as a single business enterprise with both Shook and Jaehne.

The Waldens had pled for attorney's fees under chapter 38 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."). Following the verdict, the parties tried the amount of attorney's fees to the bench. Thereafter, the district court rendered judgment awarding the Waldens the following sums from S&J, Shook and Jaehne, jointly and severally:

- $80,000 "for damages caused by Defendants' breach of contract of the Residential Construction Contract."

2

- Prejudgment interest on the contract damages at the rate of five percent per annum, accruing from September 19, 2006. This totaled $11,189.05.[1]

- $318,000 in reasonable and necessary trial attorney's fees.

- An additional $10,000 in attorney's fees "for the services required to perform post-judgment discovery and to satisfy the judgment by writ of execution."

- A total of $25,000 in contingent appellate attorney's fees.

- $10,591.25 "as costs associated with professional services necessitated by actions of Defendants."

- "Costs, including but not limited to Jury costs."

- Post-judgment interest, at the rate of five percent per annum, on the amounts of contract damages, prejudgment interest, trial attorney's fees, post-judgment trial-level attorney's fees, and "costs associated with professional services" described above.

Following post-judgment motions, Shook filed a notice of appeal in this Court.[2] On October 5, Shook deposited with the district clerk a cashier's check in the amount of $94,936.25 for the purpose of superseding the judgment. *See* Tex. R. App. P. 24.1(a)(3), (c).[3] Contending that this amount was insufficient to secure the judgment, the Waldens filed a motion requesting the district court to determine the sufficiency of Shook's security. *See id.* R. 24.3(a)(1).[4]

---

[1] The judgment awarded $11,112.33 "as of June 29, 2009, with an earned daily interest in the amount of $10.96 per day after June 29, 2009." The district court ultimately signed the judgment on July 7.

[2] Jaehne and the Waldens have also filed notices of appeal.

[3] It does not appear that Jaehne has attempted to supersede the judgment, and he is not a party to the present dispute regarding the amount of security required to do so.

[4] Although the Hon. H. R. Towslee signed the judgment from which the underlying appeal is taken, the Hon. Reva Towslee-Corbett presided over the post-judgment proceedings regarding the security amount and related disputes.

To suspend a money judgment pending appeal in a civil case, section 52.006, subsection (a), of the civil practice and remedies code requires that a judgment debtor furnish a bond, deposit, or other security in an amount "equal [to] the sum of: (1) the amount of compensatory damages awarded in the judgment; (2) interest for the estimated duration of the appeal; and (3) costs awarded in the judgment." Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a); *see* Tex. R. App. P. 24.2(a)(1) (rule implementing section 52.006, subsection (a)). This amount, however, may not exceed the lesser of fifty percent of the judgment debtor's current net worth or $25 million. Tex. Civ. Prac. & Rem. Code Ann. § 52.006(b); *see* Tex. R. App. P. 24.2(a)(1). Additionally, if the trial court finds that the judgment debtor is likely to suffer "substantial economic harm" from posting security in the amount otherwise required, the court "shall lower the amount of the security to an amount that will not cause the judgment debtor substantial economic harm." Tex. Civ. Prac. & Rem. Code Ann. § 52.006(c); *see* Tex. R. App. P. 24.2(b).

Shook contended that the $94,936.25 he deposited was sufficient under section 52.006, subsection (a), to supersede the judgment because it represented the sum of (1) the $80,000 in contract damages, which Shook asserted were the entirety of the "compensatory damages awarded in the judgment;" (2) post-judgment interest on the contract damages at the judgment rate of five percent for an estimated one-year duration of the appeal, which equaled $4,000;[5] and (3) "costs awarded in the judgment" of $345 in court costs certified by the district clerk plus the $10,591.25 in "costs associated with professional services" awarded in the judgment.[6] *See* Tex. Civ.

---

[5] $80,000 x .05 = $4,000.

[6] Shook conceded "for the limited purpose of determining his supersedeas deposit amount" that the $10,591.25 the district court awarded as "costs associated with professional services"

Prac. & Rem. Code Ann. § 52.006(a); Tex. R. App. P. 24.2(a)(1). Shook further asserted that a higher amount of security would cause him "substantial economic hardship," *see* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(c); Tex. R. App. P. 24.2(b), and that, at a minimum, the district court was required to limit the amount of security to fifty percent of his net worth. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(b); Tex. R. App. P. 24.2(a)(1). Shook filed evidence relevant to his net worth, including an affidavit in which he testified that his net worth was $514,029.00.

The Waldens asserted that Shook's deposit was insufficient because it did not secure the $318,000 in trial attorney's fees, the $10,000 in post-judgment trial-level attorney's fees,[7] or prejudgment interest awarded in the judgment. They also urged that a more reasonable "estimated duration of the appeal" for which post-judgment interest must be secured was two years rather than the one-year estimate that Shook had employed, and that Shook was required to provide additional security for post-judgment interest on attorney's fees, prejudgment interest, and the "costs associated with professional services." The Waldens also filed objections to Shook's evidence[8] and sought a deposition and document discovery from Shook concerning his net worth and any transfers of

---

were "costs awarded in the judgment" that he was required to secure under section 52.006, subsection (a)(3).

[7] The Waldens conceded that Shook was not required to secure the conditional appellate attorney's fees, citing pre-2003 case law holding that such fees were not required to be secured pending appeal because the fees did not become fully executable until the events on which they were conditioned occurred. *See Hamilton v. Hi-Plains Truck Brokers, Inc.*, 23 S.W.3d 442, 443 n.1 (Tex. App.—Amarillo 2000) (per curiam order). Shook characterizes the Waldens' assertions as also conceding that the $10,000 in attorney's fees awarded for post-judgment proceedings were not required to be secured. We disagree with Shook's characterization of the Waldens' arguments.

[8] In this connection, the Waldens also filed a motion to disqualify Shook's counsel on the asserted ground that one of the affidavits on which Shook relied consisted of expert testimony on net worth by a partner in counsel's firm.

5

assets since January 1, 2006. Shook objected to the discovery on grounds that he had made a deposit sufficient to supersede the judgement, *see* Tex. R. Civ. P. 621a (permitting certain post-judgment discovery "so long as said judgment has not been suspended"), and that the district court had not held his deposit to be insufficient or even considered the issue yet.

A hearing on the Waldens' motion was held on December 9, 2009. The sole focus of the hearing was the threshold issue of whether the amount of Shook's deposit satisfied the requirements of section 52.006, subsection (a). No additional evidence was presented. Following the hearing, the district court signed an order determining that Shook's $94,936.25 deposit amount was insufficient to supersede the judgment. The court also set the amount of security required to supersede the judgment at $257,014.50—corresponding to fifty percent of Shook's net worth as represented in his affidavit—plus the "[c]osts, including but not limited to Jury costs," awarded in the judgment. These "costs," the Waldens acknowledge, refer to court costs. Although the parties dispute the amount of court costs that Shook must secure, as discussed below, the Waldens contend they are less than $2,000.

The order does not explain how the district court calculated $257,014.50 as the amount required to secure the judgment, nor were findings of fact and conclusions of law issued or requested. As the parties seem to acknowledge, however, the calculation necessarily rests on the legal conclusion that the $318,000 in trial attorney's fees (or some portion thereof) must be included in the amount required to secure the judgment, as this is the only sum awarded in the judgment

whose inclusion, alone or in combination with other amounts awarded in the judgment, would yield a sum equal to or exceeding $257,104.50.[9]

The district court ordered that post-judgment discovery proceed and indicated that it would address in further proceedings any issues relating to the application of limitations on security based on Shook's net worth.[10] On the following day, Shook filed his motion requesting this Court to review the district court's order setting the amount of security required to supersede the judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(d); Tex. R. App. P. 24.4. With his motion, Shook also requested an emergency stay of all proceedings in the district court, including post-judgment discovery and further proceedings concerning his net worth, pending our disposition of his motion. We granted the stay as requested.

## ANALYSIS

Shook challenges the district court's order on essentially four grounds. In his primary complaint, he challenges the district court's legal conclusion that the $318,000 in trial attorney's fees

---

[9] In fact, the reporter's record from the hearing reflects that the district court opined that "attorney's fees should be included" in the amount of security required under section 52.006, subsection (a)(1). The court did not mention any of the other amounts in dispute. The court then attempted to apply the fifty-percent cap under section 52.006, subsection (b) based on the $514,029.00 net worth figure Shook had claimed in his affidavit, yielding the $257,014.05 figure.

We note that the district court actually ordered that Shook secure an amount equal to fifty percent of his net worth as represented in his affidavit, $257,014.50, *plus* "[c]osts, including but not limited to Jury costs," awarded in the judgment. It is the total amount of security, including "costs awarded in the judgment," that is capped at the lesser of fifty percent of the judgment debtor's net worth or $25 million. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a)-(b) (West 2008); Tex. R. Civ. P. 24.2(a).

[10] The court emphasized that Shook's affidavit concerning his net worth was "all I have in front of me" in the way of evidence on that issue.

7

awarded in the judgment must be included in the calculation of the amount of security required under section 52.006, subsection (a). Shook also challenges alternative grounds asserted by the Waldens that could support the portion of the district court's order holding that $94,936.25 in security is insufficient under section 52.006, subsection (a). Shook argues that the prejudgment-interest award is not included in the calculation under section 52.006, subsection (a); that his one-year estimated duration of the appeal is reasonable as a basis for determining the amount of post-judgment interest to be secured; and that he adequately secured court costs.

**Standard of review**

We review a trial court's ruling setting post-judgment security under an abuse-of-discretion standard. *See Ramco Oil & Gas Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 909-10 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In general, "abuse of discretion" means the trial court acted "without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). However, to the extent the trial court's ruling turns on a question of law, we review it de novo because a "trial court has no 'discretion' in determining what the law is or applying the law to the facts," *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992), and therefore "abuses its discretion" if it misinterprets or misapplies the law. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *Walker*, 827 S.W.2d at 840. The principal issues in this proceeding turn on a pure question of law—construction of section 52.006 of the civil practice and remedies code, as amended in 2003, and other statutes.

Statutory construction presents a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction

8

is to give effect to the legislature's intent. *See id*. We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). We consider the words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (citing *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004); *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 189 (Tex. 1981); *University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004)); *see Entergy Gulf States, Inc.*, 282 S.W.3d at 437 ("This general rule [that text is determinative of legislative intent] applies unless enforcing the plain language of the statute as written would produce absurd results"; also recognizing that legislative definitions of terms control over their ordinary meaning); Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We should also read every word, phrase, and expression in a statute as if it were deliberately chosen, and likewise presume that words excluded from the statute are done so purposefully. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). Our analysis of the statutory text

is also informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005), and consideration of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, and "common law or former statutory provisions, including laws on the same or similar subjects." *Id*. § 311.023(1)-(4) (West 2005). Similarly, we assume that when enacting a statute, the legislature was aware of the background law and acted with reference to it. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). However, only when the statutory text is ambiguous "do we 'resort to rules of construction or extrinsic aids.'" *Entergy Gulf States, Inc.*, 282 S.W.3d at 437 (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)).

**Attorney's fees**

Shook argues that the attorney's fees awarded to the Waldens are neither "compensatory damages awarded in the judgment" nor "costs awarded in the judgment" under section 52.006, subsection (a). The Waldens respond that the fees are either or both and that Shook must secure the $318,000 in trial attorney's fees and $10,000 in post-judgment attorney's fees because they are fully executable.[11]

---

[11] Again, the Waldens concede that the contingent appellate attorney's fees need not be secured because they are not yet fully executable. Shook argues in the alternative that the trial-level, post-judgment attorney's fees are also contingent, like the appellate attorney's fees, and need not be secured even under the Waldens' analysis. Because we conclude below that none of the attorney's fees awarded in the judgment are required to be secured under section 52.006, subsection (a), we need not address this contention.

10

"***Compensatory damages awarded in the judgment***"

In support of his arguments concerning both compensatory damages and costs, Shook emphasizes that section 52.006 is a product of the seminal 2003 legislation commonly referenced by its bill number, "H.B. 4." Before H.B. 4, as Shook observes, the amount of security required to supersede a money judgment was set by rule as "at least the amount of the judgment, interest for the estimated duration of the appeal, and costs." Former Tex. R. App. P. 24.2(a)(1) (eff. Sept. 1, 1997) (amended Aug. 29, 2003 and Sept. 10, 2003, eff. Sept. 1, 2003; amended Mar. 10, 2008 and Aug. 20, 2008, eff. Sept. 1, 2008). This standard permitted courts to require security for the amount of attorney's fees awarded in a judgment, at least to the extent that they were fully executable and not contingent on appeal. *See Hamilton v. Hi-Plains Truck Brokers, Inc.*, 23 S.W.3d 442, 443 n.1 (Tex. App.—Amarillo 2000) (per curiam order). In H.B. 4, however, the legislature added section 52.006 to the civil practice and remedies code. Subsection (a) of section 52.006 fixed the amount of security required to supersede a money judgment "*equal* [to] the sum of: (1) *the amount of compensatory damages awarded in* the judgment; (2) interest for the estimated duration of the appeal; and (3) costs *awarded in the judgment*." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 7.02, sec. 52.006(a), 2003 Tex. Gen. Laws 847, 863, *codified at* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a) (emphases added); *see also* Tex. R. App. P. 24.2(a)(1) (implementing section 52.006, subsection (a)). At the same time, as Shook points out, the legislature in subsection (b) of section 52.006 capped the amount of security as the lesser of $25 million or fifty percent of the judgment debtor's net worth, *see* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 7.02, sec. 52.006(b), 2003 Tex. Gen. Laws 847, 863, *codified at* Tex. Civ. Prac. & Rem. Code Ann.

11

§ 52.006(b); *see* Tex. R. App. P. 24.2(a)(1), and added the further requirement in subsection (c) that trial courts must lower the amount of security upon a showing that the judgment debtor is "likely to suffer substantial economic harm," *see* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 7.02, sec. 52.006(c), 2003 Tex. Gen. Laws 847, 863, *codified at* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(c); *see* Tex. R. App. P. 24.2(b); *cf.* Act of May 22, 1989, 71st Leg., R.S., ch. 1178, § 1, sec. 52.002(1), (2), 1989 Tex. Gen. Laws 4813, 4813-14, *codified at* former Tex. Civ. Prac. & Rem. Code Ann. § 52.002(1), (2) (affording trial courts discretion to reduce the required security amount upon finding that "setting the security at an amount equal to the amount of the judgment, interest, and costs would cause irreparable harm to the judgment debtor" and doing so "would not substantially decrease the degree to which a judgment creditor's recovery under the judgment would be secured"), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 7.03, 2003 Tex. Gen Laws 847, 863. In these ways, as Shook observes, the H.B. 4 amendments addressing security requirements reflected a policy shift away from a primary goal of protecting judgment creditors toward the goal of protecting judgment debtors' ability to appeal. *Ramco Oil & Gas*, 171 S.W.3d at 916-17; *see also* Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal After House Bill 4*, 46 S. Tex. L. Rev. 1035, 1038 (2005) (observing that H.B. 4 changes "reflect[ed] a new balance between the judgment creditor's right in the judgment and dissipation of the judgment's debtor's assets during the appeal against the judgment debtor's right to meaningful and easier access to appellate review").

Especially considering its legislative origins, Shook urges, the phrase "compensatory damages awarded in the judgment" in section 52.006, subsection (a)(1), reflects legislative intent

12

to depart from prior law and exclude attorney's fees from the amount of security required to supersede a money judgment. He further relies on a definition of "compensatory damages" found in chapter 41 of the civil practice and remedies code; the longstanding general rule in Texas that attorney's fees are not recoverable as damages, but only when authorized by contract or statute; and the assertion that attorney's fees awarded under chapter 38 of the civil practice and remedies code are in the nature of a penalty rather than compensatory damages.

In response, the Waldens assert that while H.B. 4 may have excluded exemplary damages from the security required on appeal, it did not change prior law with respect to attorney's fees. They urge that we follow a post-H.B. 4 case from one of our sister courts, *Clearview Props., L.P. v. Property Tex. SC One Corp.*, 228 S.W.3d 262 (Tex. App.—Houston [14th Dist.] 2007) (per curiam order), which, they assert, holds that attorney's fees awarded under chapter 38 of the civil practice and remedies code are "compensatory damages," "costs," or both, and thus must be secured to the extent they are fully executable. The Waldens further contend that the definition of "compensatory damages" in chapter 41 of the civil practice and remedies code "has no application to this case wherein punitive damages have not been recovered." In any event, Waldens urge that attorney's fees awarded under chapter 38 are in the nature of incidental or consequential compensatory damages, not a penalty, citing language from two court of appeals opinions that have characterized such fees in that manner. *See Goodyear Tire & Rubber Co. v. Portilla*, 836 S.W.2d 664, 672 (Tex. App.—Corpus Christi 1992) ("The purpose of awarding attorney's fees and taxing it against the losing defendant is to make the successful plaintiff whole. The winning plaintiff is entitled to the full damages suffered as a result of the defendant's breach of contract, and the

13

plaintiff's recovery does not bear the burden of the costs necessarily incurred in enforcing his rights under the contract."), *aff'd*, 879 S.W.2d 47 (Tex. 1994); *Crumpton v. Stevens*, 936 S.W.2d 473, 476 (Tex. App.—Fort Worth 1996, no writ) ("A claim for attorney's fees under [§ 38.001] . . . is in the nature of incidental damages."). Similarly, they observe that the legislature has required that chapter 38 "be liberally construed to promote its underlying purposes," Tex. Civ. Prac. & Rem. Code Ann. § 38.005 (West 2008), in contrast to "the general rule that a statute which authorizes the recovery of attorney's fees is penal in character and must be strictly construed." *Bloom v. Bloom*, 767 S.W.2d 463, 471 (Tex. App.—San Antonio 1989, writ denied).

To determine whether the attorney's fees awarded to the Waldens are "compensatory damages awarded in the judgment" under section 52.006, subsection (a)(1), we begin with the text of that provision.[12] The legislature did not define "compensatory damages" within section 52.006 or anywhere in chapter 52. However, as Shook emphasizes, it did define that term in chapter 41 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(8) (West 2008).[13] "Compensatory damages" are defined in chapter 41 as "economic and noneconomic damages" and not "exemplary damages." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(8). "Economic damages," in turn, are defined as "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss" and not "exemplary damages" or "noneconomic damages." *Id.* § 41.001(4). "Noneconomic damages" are defined as "damages

---

[12] *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008).

[13] *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437 (recognizing that legislative definitions of terms control over their ordinary meaning); Tex. Gov't Code Ann. § 311.011 (West 2005).

awarded for the purpose of compensating a claimant for . . . nonpecuniary losses of any kind other than exemplary damages." *Id.* § 41.001(12).[14] "Exemplary damages" are defined as "any damages awarded as a penalty or by way of punishment but not for compensatory purposes. . . . includ[ing] punitive damages." *Id.* § 41.001(5).[15]

Although the Waldens dismiss the applicability of chapter 41's definitions in a case where no exemplary damages are at issue, chapter 41 plainly extends more broadly. In its current form, chapter 41 is titled "Damages," *see id*. ch. 41, explicitly "applies to any action in which a claimant seeks damages relating to a cause of action," *id.* § 41.002(a) (West 2008),[16] and contains a provision addressing recovery of certain compensatory damages, *id.* § 41.0105 (limitation on recovery of damages for certain medical or health-care expenses). We also observe that section 52.006 and chapter 41's definition of "compensatory damages" have common origins in H.B. 4, and it is also significant that H.B. 4 broadened the scope of chapter 41 from solely an exemplary damages regulation to its current form. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 13.01-.02, sec. 41.001, 2003 Tex. Gen. Laws 847, 886-87 (changing heading of

---

[14] The definition specifically lists " physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, [and] injury to reputation" as examples of the "nonpecuniary losses . . . other than exemplary damages" that would be "noneconomic damages."

[15] Chapter 41 also defines a subcategory of "compensatory damages," "future damages," which are defined as "damages that are incurred after the date of the judgment" and specifically exclude "exemplary damages." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(9) (West 2008).

[16] And a money judgment that included "compensatory damages," as contemplated in section 52.006, subsection (a)(1), would necessarily be one in which the claimant had sought damages relating to a cause of action.

chapter 41 from "Exemplary Damages" to "Damages," adding provision limiting recovery of certain health care expenses as economic damages, revising definitions of "economic damages" and "exemplary damages," and adding definitions of "compensatory damages" and "noneconomic damages"). In sum, Chapter 41's text and relationship to section 52.006 reflect legislative intent to incorporate chapter 41's definition of "compensatory damages" into section 52.006(a)(1)'s "compensatory damages awarded in the judgment." *Entergy Gulf States, Inc.*, 282 S.W.3d at 437 (courts are bound to follow definitions supplied by the legislature) (citing Tex. Gov't Code Ann. § 311.011(b)); *see Texas Dept. of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) ("Statutory terms should be interpreted consistently in every part of an act."); *see also* Carlson, *supra*, at 1087-88 & n.310 (observing that chapter 41's "compensatory damages" definition is "the statutory definition of compensatory damages applicable to Texas civil actions").[17]

The Waldens concede that the attorney's fees in issue would not be "noneconomic damages" as defined in chapter 41, but suggest they would be "economic damages," i.e., "damages intended to compensate [the Waldens] for actual economic or pecuniary loss." With respect to the attorney's fees awarded here, we conclude otherwise.

The text of chapter 41's "economic damages" definition and its role within the chapter indicate that attorney's fees awarded under chapter 38 are not included in "economic damages." Although attorney's fees are frequently a substantial component of recoveries in

---

[17] In the alternative, we would look to the plain meaning of "compensatory damages," *City of Rockwall*, 246 S.W.3d at 625-26, and this would not appear to differ substantially from the legislative definition in chapter 41. *See* Black's Law Dictionary 270 (Abr. 6th ed. 1991) (defining "compensatory damages" as damages that will "compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury").

16

civil cases, the legislature never mentioned them in any of chapter 41's definitions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(4), (5), (8), (12); *cf. Clearview*, 228 S.W.3d at 263 (observing that these definitions "do not expressly *exclude* attorney's fees") (emphasis added); *see also* Carlson, *supra*, at 1089-90 n.319 (observing that attorney's fees are not explicitly included in the definitions of "economic damages" and "noneconomic damages"). Moreover, "economic damages" and "noneconomic damages" within chapter 41 serve as variables in the calculation of the chapter's caps on "exemplary damages." *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.008 (West Supp. 2009). As the Waldens emphasize, exemplary damages would not be recoverable on a contract claim like theirs, on which attorney's fees can be recovered under chapter 38, but would instead be an issue in tort cases where attorney's fees are generally not recoverable. But rather than indicating chapter 41 is irrelevant to our analysis, as the Waldens argue, this fact tends to confirm that the "compensatory damages" the legislature contemplated in chapter 41—and incorporated into section 52.006, subsection (a)(1)—would not include attorney's fees awarded under chapter 38.

This construction of "compensatory damages" and "economic damages" finds further support when viewed in the statutory and jurisprudential context in which the legislature crafted these provisions. *Acker*, 790 S.W.2d at 301. "Texas has long followed the 'American Rule' prohibiting [attorney's] fee awards unless specifically provided by contract or statute." *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006)). At common law, in other words, "each party pays its own lawyers" and such fees are not ordinarily considered to be compensable losses or

17

an element of recoverable damages. *See id.* at 663; *cf. Clearview*, 228 S.W.3d at 264 (example of contract permitting recovery of attorney's fees as damages).

The basis for the district court's attorney's fee award, chapter 38 of the civil practice and remedies code, authorizes recovery of reasonable attorney's fees incurred in connection with prosecuting certain claims, including contract claims, that are presented to the opposing party and not paid within thirty days thereafter. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001-.002 (West 2008). While attorney's fees awarded under chapter 38 may be said to "compensate," "make whole," or "indemnify" a claimant for the legal expenses he incurs in prosecuting such a claim, as the Waldens and some courts of appeals have suggested, this does not mean the fees are "damages intended to compensate the claimant for actual economic or pecuniary loss" under the meaning of chapter 41. As Shook points out, chapter 38 explicitly distinguishes between the underlying claim for loss or injury and the attorney's fees the statute authorizes. *See id.* § 38.001 ("A person may recover reasonable attorney's fees from an individual or corporation, *in addition to the amount of a valid claim and costs . . . .*") (emphasis added); *see Huff v. Fidelity Union Life Ins. Co.*, 312 S.W.2d 493, 501 (Tex. 1958) (observing that "the attorney's fees [awarded under chapter 38's predecessor] are not part of the demand or claim"). Further emphasizing the distinction, the Texas Supreme Court has relied on this statutory language in recent years in holding that breach-of-contract plaintiffs must prove some amount of damages in order to recover attorney's fees under chapter 38. *See MBM Fin. Corp.*, 292 S.W.3d at 666 ("To recover fees under [chapter 38], a litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover damages. The second requirement is implied from the statute's language: for a fee recovery to be 'in *addition* to the

18

amount of a valid claim,' the claimant must recover some amount on that claim.") (citations omitted); *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Indeed, the supreme court has also gone as far as to characterize such fees as "in the nature of a penalty, or punishment for failure to pay a just debt," as opposed to compensation for the underlying loss or injury. *Huff*, 312 S.W.2d at 501.

These considerations persuade us that attorney's fees awarded under chapter 38 are not "compensatory damages awarded in the judgment" under section 52.006, subsection (a)(1). *See also* Carlson, *supra*, at 1089-90 n.319 ("Under [chapter 41's] statutory definitions, neither interest nor attorney's fees are compensatory damages."). The *Clearview* case cited by the Waldens does not hold otherwise. *See Clearview*, 228 S.W.3d 262. *Clearview* involved a dispute under a contract that entitled the prevailing party to recover attorney's fees "as compensation." *Id.* at 264. The trial court's final judgment awarded one appellee, Property Texas SC One Corporation, "$141,642.91 as damages for reasonable attorney's fees" and another appellee, T. Reit L.P. "$211,599.33 as damages for reasonable attorney's fees." *Id.* at 263. Appellants filed a motion with the trial court to set the amount of security pending appeal as no more than $5,168.55, a figure based on "an estimate of costs" that did not include any attorney's fees. The trial court set the amount of the appellants' security for damages at $353,242.24 (the sum of the two attorney's fee awards) and security for "costs" at $5,165.55 (corresponding to appellants' estimate). *See id.* Appellants filed a motion in the court of appeals to reduce the amount of security to not more than $5,165.55. They argued that attorney's fees did not constitute "compensatory damages" that had to be secured, citing, like Shook, to the definitions in chapter 41 of the civil practice and remedies code. *See id.*

19

Appellants further argued that attorney's fees also should not be included in the amount of "costs awarded in the judgment." *Id*. at 264.

The *Clearview* court upheld the trial court's order, citing the following three rationales in support: (1) attorney's fees "should be considered part of the 'costs awarded in the judgment'" because "our court has previously held that attorney's fees are in the nature of costs," citing *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); (2) the court had held in a pre-H.B. 4 family-law case that "attorney's fees awarded in the judgment (that were not for enforcement of a child-support order) were a debt that could have been suspended by the filing of a supersedeas bond," citing *Roosth v. Daggett*, 869 S.W.2d 634, 637 (Tex. App.—Houston [14th Dist.] 1994, no writ); and (3) "the contract between the parties provided for attorney's fees to constitute compensation." *Clearview*, 228 S.W.3d at 264. The court then concluded:

> Whether, under the facts of this case, the attorney's fees awards are in the nature of costs or damages, neither Rule 24, nor section 41.001, precludes the trial court from setting an amount, such as that set in this case, to secure this award.

*Id.*

*Clearview* thus did not involve attorney's fees awarded under chapter 38, as here, but fees awarded as "compensation" under an express contractual provision. And the fact that the fees were awarded under a contractual provision, furthermore, was pivotal to the court's holding that the attorney's fees were "damages" "*under the facts of this case*." *Id*. (emphasis added). Consequently, *Clearview* is plainly distinguishable from the present case. To the extent it is not, we decline to

20

follow it as inconsistent with our construction of section 52.006, subsection (a)(1), detailed above.

We hold that the attorney's fees awarded to the Waldens are not "compensatory damages awarded in the judgment" under section 52.006, subsection (a)(1), of the civil practice and remedies code.

### *"Costs awarded in the judgment"*

Shook argues that in using the phrase "costs awarded in the judgment" in section 52.006, subsection (a)(3), the legislature was not referring to attorney's fees, but court costs that may be taxed against a party in a trial court judgment, i.e., what appears on the clerk's certified bill of costs. Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b) (West 2008); Tex. R. Civ. P. 125-140. As Shook observes, these costs consist of fees and charges required by law or rule to be paid to the judicial branch or its agents, the amount of which is fixed by statute or rule. For example, Shook observes, section 31.007 of the civil practice and remedies code authorizes courts to "include in any order or judgment all costs, including the following":

(1) fees of the clerk and service fees due the county;

(2) fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit;

(3) masters, interpreters, and guardians ad litem appointed pursuant to these rules and state statutes; and

(4) such other costs and fees as may be permitted by these rules and state statutes.

21

Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b); *see also Sterling Bank v. Willard M, L.L.C.*, 221 S.W.3d 121, 125 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("'Costs' usually refer to fees and charges required by law to be paid to the courts or some of their officers, the amount of which is fixed by statute or the court's rules e.g. filing and service fees."). In contrast, Shook emphasizes, attorney's fees are amounts owed to one's own lawyers, not officials or agents of the judicial branch, and are not traditionally considered "costs." *See id.* ("Generally, in Texas, expenses incurred in prosecuting or defending a lawsuit are not recoverable as costs, unless permitted by a statute or equitable principle."). He adds that chapter 38 of the civil practice and remedies code, the basis for the attorney's fee award here, does not purport to award attorney's fees as "costs," but instead distinguishes the two, as it does with damages. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 ("A person may recover reasonable attorney's fees from an individual or corporation, *in addition to the amount of a valid claim and costs . . . .*") (emphasis added).

In response, the Waldens again urge us to follow *Clearview*, which, in their view, held that attorney's fees are "costs awarded in the judgment" under section 52.006, subsection (a)(3). They further contend "costs awarded in the judgment" are not limited to court costs, but refer more broadly to "costs" in the sense of cost-shifting under chapter 38, which departs from the American Rule and authorizes the prevailing party in a breach-of-contract claim to recover money damages for his legal expenses from the losing party. In support, the Waldens emphasize that Texas's offer-of-settlement statute—like section 52.006, an H.B. 4 addition to the civil practice

22

and remedies code[18]—defines "litigation costs" to include not only "court costs" but also attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 42.001(5) (West 2008). They add that attorney's fees awarded under statute are similarly considered to be "costs" under the federal offer-of-settlement rule. *See* Fed. R. Civ. P. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."); *Marek v. Chesny*, 473 U.S. 1, 7-10 (1985) ("plain meaning" of "costs" under rule 68 includes attorney's fees when the underlying action includes a statutory basis for attorney's fees).

The legislature did not specifically define "costs awarded in the judgment" in section 52.006 or chapter 52. However, elsewhere in the civil practice and remedies code, as the parties indicate, the legislature authorized trial courts to award two types of "costs" in a judgment—"costs" under section 31.007 and "litigation costs" under the offer-of-settlement statute, chapter 42 of the code. Neither type of "costs" would include the attorney's fee award here.

Section 31.007 authorizes trial courts to "include in any order or judgment all costs" and then enumerates various fees and expenses that parties pay to the court or its agents. Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b). That is also the sense in which "costs" has long been used in the Texas Rules of Civil Procedure. Tex. R. Civ. P. 125-140. It is well established that these provisions authorizing trial courts to award "costs" do not in themselves authorize the award of attorney's fees. *See Sterling Bank*, 221 S.W.3d at 125; *Westech Eng'g Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 206 (Tex. App.—Austin 1992, no writ) ("'Costs' generally

---

[18] *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 2.01, 2003 Tex. Gen. Laws 847, 850-52.

23

do not include costs billed to the client as part of the attorney's fee for services provided. . . . We find no error in the court's decision to deny appellee's requested litigation expenses which do not comport with the traditional definition of costs."); *see also* Carlson, *supra*, at 1089-90 n.319 ("Neither interest nor attorney's fees are traditionally considered costs of court."). Nor does chapter 38 of the civil practice and remedies code authorize the award of attorney's fees as "costs," as Shook points out. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001. To the contrary, as previously discussed, chapter 38 distinguishes "costs" from the attorney's fees awarded under the provision. *See id.*

As for chapter 42, it creates a system of settlement incentives in certain suits for money damages by requiring the award of "litigation costs" against a party who rejects a settlement offer that turns out to be significantly more favorable to the party than the ultimate judgment. *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 42.001-.005 (West 2008); *see also* Tex. R. Civ. P. 167 (implementing rules). "Litigation costs" under chapter 42 are defined as "money actually spent and obligations actually incurred that are directly related to the case in which a settlement offer is made," specifically including "(A) court costs; (B) reasonable fees for not more than two testifying expert witnesses; and (C) reasonable attorney's fees." Tex. Civ. Prac. & Rem. Code Ann. § 42.001(5). The litigation costs that may be recovered by the offering party "are limited to those litigation costs incurred by the offering party after the date the rejecting party rejected the settlement offer," *id.* § 42.004(c), and are capped by a formula prescribed in the statute. *Id.* § 42.004(d).

It is unclear whether "costs awarded in the judgment" under section 52.006, subsection (a)(3), would include "litigation costs" awarded under chapter 42. We note that the legislature referred to "*costs* awarded in the judgment" in section 52.006, subsection (a)(3)—a term corresponding to "costs" in section 31.007 and the rules of civil procedure—while employing "*litigation* costs" in chapter 42, which would be consistent with intent to distinguish the two. However, even if "litigation costs" awarded under chapter 42 would be "costs awarded in the judgment" under section 52.006, subsection (a)(3), the attorney's fees at issue here were awarded to the Waldens under chapter 38 of the civil practice and remedies code, not as "litigation costs" under chapter 42. Nor could the Waldens' attorney's fee award even be included in an award of chapter 42 "litigation costs." Chapter 42 provides that a claimant who is entitled to recover "fees and costs under another law" cannot also recover those fees and costs incurred after the rejection of the settlement offer as "litigation costs." *Id.* § 42.004(e), (f). Consequently, the attorney's fees awarded to the Waldens would not be "costs awarded under the judgment" by virtue of being included in an award of "litigation costs."

The Waldens maintain that the fact attorney's fees are included in chapter 42's definition of "litigation costs" means that attorney's fees awarded under chapter 38 should be considered "litigation costs," and by extension, "costs awarded in the judgment" under section 52.006, subsection (a)(3). That is not what chapter 42 says or does. As noted, chapter 42 specifically excludes attorney's fees awarded under "another law" from recoverable "litigation costs." *Id.* § 42.004(e), (f). More generally, the fact that chapter 42 includes certain attorney's fees in "litigation costs" does not reflect some sort of broad legislative recognition that attorney's fees

25

should be considered "costs" in other contexts. Chapter 42 has a specific, narrow focus: it establishes a system of financial incentives that reward reasonable settlement efforts and punish unreasonable settlement conduct by requiring a party who rejects a reasonable settlement offer to bear a portion of the litigation expenses the offering party incurs after the offer is rejected. Those litigation expenses that can be shifted—"litigation costs"—are defined and limited in a manner that reflects a balancing of policy interests in encouraging settlements while avoiding coercion, gamesmanship, or unfair windfalls for offering parties. The fact that the legislature included certain attorney's fees in "litigation costs" merely reflects its balancing of these interests. It does not imply that "costs" as a general matter include attorney's fees any more than the legislature's inclusion of other amounts in "litigation costs" (e.g., "reasonable fees for not more than two testifying expert witnesses," *see* Tex. Civ. Prac. & Rem. Code Ann. § 42.001(5)(B)) makes those amounts "costs" in other contexts. In sum, the concept of "litigation costs" or "costs" employed in the context of Texas's offer-of-settlement statute is unique to that provision and distinct from the "costs awarded in the judgment" under section 52.006, subsection (a)(3), which is founded on a balancing of very different policy interests. For similar reasons, we conclude that the concept of "costs" under the federal offer-of-settlement rule is likewise inapposite.[19]

---

[19] The Waldens also assert that "the post-judgment interest statute, which references 'costs' but not 'attorney's fees,' has always been interpreted to apply to attorney's fees incurred at the trial court level in a breach of contract action." However, this does not support their view that "costs" include attorney's fees. The Waldens rely on section 304.003 of the finance code, which provides, "A money judgment of a court of this state . . . including court costs awarded in the judgment and prejudgment interest, if any, earns postjudgment interest in the rate determined under this section.") Tex. Fin. Code Ann. § 304.003(a) (West 2006). Attorney's fees would be included in the "money judgment" component of that definition.

On the other hand, *Clearview* may support the Waldens' position, as the court appears to embrace the view that attorney's fees "should be considered part of the 'costs awarded in the judgment.'" *See* 228 S.W.3d at 264. To the extent *Clearview* is precedent for holding that the attorney's fees awarded to the Waldens are "costs awarded in the judgment," we are not persuaded by its analysis in light of our own and respectfully decline to follow our sister court.[20]

Beyond this, the Waldens have repeatedly urged, relying on both *Clearview* and pre-H.B. 4 case law, that they are entitled to security adequate to fully protect their interest in the trial-level attorney's fees the district court awarded them. The legislature, as we have seen, has struck a different balance of interests in section 52.006, and we are bound to defer to these policy judgments.

---

[20] *Clearview* does not extensively analyze section 52.006, subsection (a), but cites one of its own decisions from 1986 for the proposition that "our court has previously held that attorney's fees are in the nature of costs." *Clearview Props., L.P. v. Property Tex. SC One Corp.*, 228 S.W.3d 262, 264 (Tex. App.—Houston [14th Dist.] 2007) (per curiam order) (citing *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)). The issue in *Williams* was whether the trial court had erred in awarding attorney's fees to an employer who had obtained injunctive relief to enforce non-compete and non-disclosure provisions of an employment agreement. The appellant employee argued that the trial court had modified the agreement because it was unreasonable in geographic scope and attempted to rely on precedent that the employer, while able to obtain injunctive relief, could not recover "damages" from the employee's conduct prior to the court's order. *Williams*, 704 S.W.2d at 474. The employee urged the court of appeals to apply and extend this limitation on "damages" awards to bar the employer's attorney's fee award. The court of appeals held that this rule was inapplicable because the employee had not claimed the contract was unreasonable, then added, "Further, attorney's fees are in the nature of costs, not damages." *Id.* (citing 20 Am. Jur. 2d *Costs* § 72 (1965). The *Williams* court's statement that "attorney's fees are in the nature of costs" was arguably unnecessary to its holding that attorney's fees could be recovered in the action. On the other hand, *Williams*'s characterization of attorney's fees as "not damages" may provide some additional support for our holding that the attorney's fees awarded to the Waldens are not "compensatory damages awarded in the judgment."

27

We hold that the attorney's fees awarded to the Waldens are neither "costs awarded in the judgment" nor "compensatory damages awarded in the judgment" under section 52.006, subsection (a), of the civil practice and remedies code. Consequently, they are not included in the amount of security required of Shook to suspend enforcement of the judgment pending appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a). Because the district court's order setting the amount of security at $257,014.50 plus court costs rests upon a contrary legal conclusion, it is an "abuse of discretion." *See Perry Homes*, 258 S.W.3d at 598; *Walker*, 827 S.W.2d at 840.

We now consider whether the portion of the court's order determining that $94,936.25 is insufficient security under section 52.006, subsection (a), can be affirmed on any of the other grounds the Waldens have presented.

**Prejudgment interest**

The parties join issue as to whether the prejudgment interest awarded in the judgment is "compensatory damages awarded in the judgment" within the meaning of section 52.006, subsection (a)(1).[21] Our disposition of this issue ultimately turns on whether the prejudgment-interest award falls within the definition of "economic damages" under chapter 41 of the civil practice and remedies code, i.e., whether it is "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss" and not "exemplary damages." Tex. Civ. Prac. &

---

[21] The Waldens do not assert that prejudgment interest would constitute "costs awarded in the judgment." *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a)(3). Similarly, they acknowledge that "interest for the estimated duration of the appeal," *id*. § 52.006(a)(2), refers to post-judgment interest.

28

Rem. Code Ann. § 41.001(4), (8). Shook argues that it is not, citing pre-H.B. 4 case law holding that prejudgment interest was not included in "actual damages" (the term used in the former version of chapter 41) that were the basis for former chapter 41's exemplary damages caps. *See Texas Health Enters., Inc. v. Geisler*, 9 S.W.3d 163, 169 (Tex. App.—Fort Worth 1999, pet. dism'd) ("Case law is clear that prejudgment interest is not part of a plaintiff's 'actual damages' and, thus, are not included in any computation of the punitive damages cap.").

The district court awarded prejudgment interest under common-law or equitable principles. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985). The Texas Supreme Court has long recognized that such interest is a form of damages—in fact, it was historically known as "interest as damages" to distinguish it from "interest *eo nomine*" specifically authorized under a contract or statute. *See, e.g.*, *Phillips Petrol. Co. v. Stahl Petrol. Co.*, 569 S.W.2d 480, 483, 485-86 (Tex. 1978). The award of prejudgment interest as damages derived from the concept that a judgment debtor wrongfully deprives the judgment creditor of the amount of damages ultimately awarded in the judgment between the time the damages accrue and the date of judgment. *See Cavnar*, 696 S.W.2d at 552-54. It is intended to compensate the judgment creditor for the opportunity cost of the damages the judgement debtor, in theory, wrongfully withheld from the judgment creditor and with which the judgment debtor could unjustly enrich himself in the interim. *See Johnson & Higgins*, 962 S.W.2d at 528 ("Prejudgment interest is 'compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment.'"); *Stahl Petrol. Co.*, 569 S.W.2d at 485.

29

As such, prejudgment interest awarded under common-law or equitable principles comes within chapter 41's "economic damages" definition because it is a form of damages intended to compensate for a form of economic or pecuniary loss recognized in Texas law. *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 814 (Tex. 2006) (rejecting argument that statutory requirement of UIM coverage for "all sums which [the insured] shall be legally entitled to recover as damages . . . because of bodily injury or property damage" excluded prejudgment interest, reasoning that such interest "constitutes additional compensatory damages for the insured's bodily injury and property damage").

As Shook emphasizes, there is case law holding that prejudgment interest could not be included in the "actual damages" to which former chapter 41's exemplary damage cap multipliers were applied. *See, e.g.*, *Qwest Commc'ns Int'l, Inc. v. AT & T Corp.*, 114 S.W.3d 15, 36-38 (Tex. App.—Austin 2003), *rev'd on other grounds*, 167 S.W.3d 324 (Tex. 2005); *Geisler*, 9 S.W.3d at 169; *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 759 (Tex. App.—Houston [14th Dist.] 1998, no pet.). This limitation derives from the prohibition—now codified in section 41.007 of chapter 41—against awarding prejudgment interest on exemplary damages. Tex. Civ. Prac. & Rem. Code Ann. § 41.007 (West 2008) ("Prejudgment interest may not be assessed or recovered on an award of exemplary damages."); *see also Cavnar*, 696 S.W.2d at 555-56 (crafting common-law rule that prejudgment interest cannot be awarded on punitive damages, in view that such interest went beyond indemnifying plaintiff for defendant's withholding of damages before judgment); *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 137 (Tex. 1988) (extending rationale to bar prejudgment interest on treble damages under

30

the DTPA and Insurance Code). The Texas Supreme Court has reasoned that these prohibitions against the award of prejudgment interest on exemplary or additional damages likewise prohibit the inclusion of prejudgment interest in the "actual damages" that are trebled under the DTPA and Insurance Code because including interest in the baseline figure that is trebled would have the same mathematical effect as an award of prejudgment interest on treble damages. *See St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 54 (Tex. 1998) (per curiam) ("Trebling the sum of damages and interest is equal to the sum of treble damages and treble interest: in other words, $3(D + I) = 3D + 3I$."). The cases on which Shook relies have extended this rationale to hold that prejudgment interest also could not be included in the "actual damages" that were multiplied to yield former chapter 41's exemplary damages cap because doing so would have the same mathematical effect as a prohibited award of prejudgment interest on punitive damages. *Qwest Commc'ns Int'l, Inc.*, 114 S.W.3d at 37-38 ("Adding prejudgment interest to the award of economic damages and then doubling the sum would be no different than adding two times the economic damages and two times the prejudgment interest to compute the final award."); *Geisler*, 9 S.W.3d at 169 ("Adding prejudgment interest to the actual damages award and then imposing the statutory cap on this aggregate amount yields the same result forbidden by the supreme court when it said prejudgment interest could not be awarded on damages."); *Seminole Pipeline Co.*, 979 S.W.2d at 759.

The rationale of these decisions may imply that section 41.007 would independently limit or preclude prejudgment interest from being included in the baseline to which chapter 41's multiplier is applied to calculate the current exemplary damage caps. Regardless, we do not

believe that any such limitation deriving from section 41.007 would change what the plain text of section 41.001's definitions of "compensatory damages" and "economic damages" mean, as they are incorporated into section 52.006, subsection (a)(1). As previously explained, these definitions encompass the prejudgment interest awarded here, and we are bound to give them effect.

We conclude that the prejudgment interest awarded by the district court is "compensatory damages awarded in the judgment" that Shook is required to secure under section 52.006, subsection (a).

**Amount of court costs**

The parties further join issue as to whether Shook fully secured the amount of court costs awarded in the judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a)(3). In dispute is whether the amount of court costs were $345.00, which Shook assumed when calculating his deposit, or $1,930.00, as the Waldens contend. The record reflects that this discrepancy stems from the Waldens' including a clerk's record fee of $1,585.00 in their calculation. This is a cost on appeal, not a "cost awarded in the judgment" of the district court. *See* Tex. R. App. P. 51.1(a). The clerk's record fee is thus not included in amount Shook must secure under section 52.006(a), subsection (3). Consequently, Shook sufficiently secured "costs awarded in the judgment."

**Post-judgment interest**

Finally, the parties join issue as to whether Shook's estimate of a one-year duration of the appeal is reasonable for purposes of securing estimated post-judgment interest, or whether, as the Waldens contend, an estimate of two years is appropriate. *See* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a)(2) (security amount must include "interest for the estimated duration of the appeal"). The Waldens have also complained that Shook failed to secure estimated post-judgment interest on the amount of prejudgment interest, trial attorney's fees, post-judgment trial-level attorney's fees, and "costs associated with professional services."

We agree with the Waldens that Shook was required to secure the amount of post-judgment interest on prejudgment interest, trial and post-judgment attorney's fees, and "costs associated with professional services." Section 52.006, subsection (a)(2), requires Shook to secure the post-judgment interest that is estimated to accrue during the pendency of the appeal, not merely the estimated post-judgment interest on the contract damages or compensatory damages. This additional amount of post-judgment interest that Shook has not yet secured totals $17,489.01.

We hold, however, that security for one year of post-judgment interest would comply with section 52.006, subsection (a)(2). If security to cover post-judgment interest for a longer period becomes warranted as the appeal progresses, the district court retains jurisdiction to revisit the matter at that juncture. *See* Tex. R. App. P. 24.3(a)(2).

## CONCLUSION

We affirm the district court's order in part and reverse in part. We hold that Shook was not required to secure the amount of attorney's fees awarded in the judgment, that he sufficiently secured the amount of costs, and that his one-year estimate of the appeal's duration is sufficient to comply with section 52.006, subsection (a)(2). However, we also hold that Shook is required to secure an additional $11,189.05 for the prejudgment interest awarded in the judgment, plus another $17,489.01 for post-judgment interest, for a total of $123,614.31 ($28,678.06 more than his prior deposit of $94,936.25) in order to suspend enforcement of this judgment pending appeal.

Enforcement of the judgment shall remain suspended for twenty days after the date of this order to afford Shook the opportunity to comply or seek relief under the limitations in section 52.006, subsections (b) or (c). *See* Tex. R. App. P. 24.4(e).

We lift our stay on the district court's proceedings with the exception of post-judgment discovery, which will remain stayed during the aforementioned twenty-day period. *See* Tex. R. Civ. P. 621a. Any further district court proceedings shall be consistent with this order.

It is ordered February 18, 2010.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Waldrop

34