# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-09-00258-CV

---

**Green Tree Servicing, LLC, Appellant**

**v.**

**1997 Circle N Ranch Limited, Appellee**

---

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 207TH JUDICIAL DISTRICT
NO. 06-O-351, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING**

---

### O P I N I O N

The principal issue presented in this appeal is whether subchapter I of finance code chapter 347 creates a cause of action whereby the owner of land leased to the owner of a manufactured home can recover unpaid rentals from a creditor of the homeowner who forecloses on the home and sells it to a third party. We conclude that subchapter I provides the landowner only a possessory lien in the manufactured home under those circumstances, not a cause of action through which it can hold the creditor personally liable. Because the judgment below awarded damages predicated solely on a purported cause of action under subchapter I, we must reverse and render judgment that the landowner take nothing.

The underlying events involve seven manufactured homes that, at relevant times, were situated on lots owned by appellee 1997 Circle N Ranch Limited (Circle N) pursuant to leases. Each owner of these manufactured homes at the time had financed their purchase with a loan

serviced by appellant Green Tree Servicing, LLC (Green Tree) and secured by a lien on the home. Ultimately, each owner defaulted on his or her loan obligations and ceased to occupy the home. Pursuant to the security instruments and the U.C.C., Green Tree sold each of the seven manufactured homes "as is and where is" to third-party purchasers. Thereafter, some of the manufactured homes remained on Circle N's property, with no lot rentals being paid, for what in some instances proved to be weeks, months, or even years before their third-party purchasers eventually removed them.

The legislature has addressed the respective rights of creditors and property owners under such circumstance in chapter 347, subchapter I of the finance code. *See generally* Tex. Fin. Code Ann. § 347.401-.404 (West 2006). Because this statutory framework provides the context for the parties' ensuing dispute and proceedings below, it is helpful to review it before continuing with our discussion of the case's factual and procedural history.

Subchapter I is titled, "Security Interests in Manufactured Homes," and its first provision, section 347.401, sets forth a general rule that "[e]xcept as provided by this subchapter, a lien or charge against a manufactured home for unpaid rental of the real property on which the manufactured home is or has been located is subordinate to the rights of a creditor with a security interest or lien that is: (1) perfected under this chapter; and (2) recorded on the document of title issued with the manufactured home." Tex. Fin. Code Ann. § 347.401. However, section 347.402 of the finance code, titled "Possessory Lien," creates the following exception to section 347.401:

(a) The owner of the real property on which a manufactured home is or has been located and for which rental charges have not been paid has a possessory lien that is not subject to Section 347.401 to secure rental charges if:

2

(1) the creditor described by Section 347.401 repossesses the manufactured home when the charges have not been paid; and

(2) the owner of the real property has mailed to the creditor by certified mail, return receipt requested, written notice of the unpaid charges.

*Id.* § 347.402(a). Subsection (b) of section 347.402, in turn, establishes the accrual period for rental charges that "[t]he possessory lien secures," while subsection (c) establishes "[t]he maximum daily rental charge that is secured by the possessory lien." *See id.* § 347.402(b) & (c). The accrual period for rental charges secured by the "possessory lien" begins on a date at least 15 days after the date the "creditor" receives the required written notice of the unpaid charges. *See id.* § 347.402(b). The maximum daily rental charge that is secured by the possessory lien is equal to one-thirtieth of the monthly rental charge last paid by the consumer. *See id.* § 347.402(c).

Next, finance code section 347.403 provides:

In addition to the recovery of the rental charges, the owner of real property who is required to retain legal counsel to recover the amounts subject to the possessory lien under Section 347.402 is entitled to recover:

(1) other actual damages;

(2) attorney's fees; and

(3) court costs.

*See id.* § 347.403. On the other hand, the next and final provision in subchapter I, section 347.404 of the finance code, provides that "[u]nless an owner of real property has a possessory lien that has priority under Section 347.402, the owner of the real property may not refuse to allow a creditor to

3

repossess and move the manufactured home." *Id.* § 347.404(a). If an owner of real property "unlawfully refuses to allow the creditor to repossess and move the manufactured home," the owner is liable to the creditor for:

    (1)    an amount computed for each day that the owner of the real property maintains possession of the home equal to one-thirtieth of the monthly payment last paid by the consumer on the credit transaction;

    (2)    other actual or exemplary damages;

    (3)    attorney's fees;

    (4)    court costs; and

    (5)    any injunctive relief ordered by a court.

*Id.* § 347.404(b).

There is no dispute that Green Tree was a "creditor" and Circle N a "property owner" with respect to each of the seven manufactured homes at issue and that their respective rights regarding the homes were thus governed by subchapter I.[1] It is likewise undisputed that Circle N mailed Green Tree the "written notice" of the unpaid rental charges on each home required by section 347.402(a)(2), and that Green Tree "repossessed" each home within the meaning of

---

[1] *See* Tex. Fin. Code Ann. § 347.002(4) (West 2006) (defining "creditor" under chapter 347). Nor is there any dispute that the seven manufactured homes at issue come within chapter 347's definition of "manufactured home," *see id.* § 347.001(5) (West 2006), or that each of the manufactured homes' owners who were parties to the loan agreements Green Tree serviced were "consumers" within the meaning of the chapter. *See id.* § 347.001(2) (West 2006).

section 347.402(a)(1),[2] giving Circle N a "possessory lien" in each home under section 347.402, subsection (a). *See id.* § 347.402(a).

The underlying dispute arose when Circle N, having invoked section 347.402, sought to recover from Green Tree the unpaid rentals secured by its possessory liens. Circle N ultimately sued Green Tree in district court to recover the unpaid rentals. Circle N's claims were predicated exclusively on what it contended was a cause of action under subsection I whereby Green Tree was made personally liable for the amount of unpaid rentals determined by the methodology in subsections (b) and (c) of section 347.402, plus attorney's fees and court costs as provided in section 347.403. *See id.* §§ 347.402, .403. Green Tree, in response, maintained that subchapter I gave Circle N only a possessory lien in each manufactured home to secure the amount of unpaid rentals determined under subsections (b) and (c) of section 347.402, but did not make Green Tree personally liable for the unpaid rental amounts secured by the liens. Because it had previously sold each of the homes to third parties, Green Tree insisted, Circle N's remedies, if any, lay against those other parties, or whoever might possess the homes now, rather than Green Tree.

The parties stipulated to many of the underlying facts, including the dates on which rental charges would begin accruing for each home under section 347.042, subsection (b), and the respective maximum daily rental charges under subsection (c). *See id.* §§ 347.402(b), (c). The case proceeded to a bench trial. After hearing evidence, the district court awarded Circle N $23,053.36 on its "rental claim," plus attorney's fees and court costs. It subsequently entered findings of fact

---

[2] However, as discussed below, the parties diverge as to precisely when and how such "repossession" by Green Tree occurred.

5

and conclusion of law. The findings and conclusions reflect that the court adopted Circle N's view that subchapter I creates a cause of action through which it could recover from Green Tree personally the unpaid rental amounts determined under section 347.402(b) and (c), plus attorney's fees and court costs as provided in section 347.403. The findings further reflect that the $23,053.36 "rental" award was predicated on the parties' stipulations regarding the rental accrual dates and maximum daily charges under section 347.402(b) and (c), along with the court's findings as to the date each home was finally removed from Circle N's property by its third-party purchaser. Although this methodology had the effect of imposing liability on Green Tree for unpaid rentals accruing on the homes even after it had sold them, the district court made findings and conclusions to the effect that Green Tree should nonetheless be liable for these amounts because the third-party purchasers acted as Green Tree's agents with respect to removing the homes from Circle N's property.

Green Tree appealed. It brings six issues, the first four of which challenge the district court's conclusions that subchapter I created a cause of action through which it could be held personally liable to Circle N for unpaid rental amounts. Our disposition of these issues turns on our construction of subchapter I. Statutory construction presents a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *See id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284); *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). We consider the

6

words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We also read every word, phrase, and expression in a statute as if it were deliberately chosen, and likewise presume that words excluded from the statute are done so purposefully. *See Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.). Our analysis of the statutory text is also informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005), and consideration of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, "common law or former statutory provisions, including laws on the same or similar subjects," "consequences of a particular construction," and the enactment's "title." *Id.* § 311.023(1)-(5), (7) (West 2005). Similarly, we assume that when enacting a statute, the legislature was aware of the background law and acted with reference to it. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). However, only when the statutory text is ambiguous "do we 'resort to rules of construction or extrinsic aids.'" *Entergy Gulf States, Inc.*, 282 S.W.3d at 437 (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)).

The cornerstone of subchapter I's remedies for property owners is section 347.402. Reflecting section 347.402's focus is its title: "Possessory Lien." *See* Tex. Gov't Code Ann. § 311.023(7). On its face, section 347.402 purports only to create a "possessory lien" in favor of the property owner when the conditions of subsection (a) are met. *See* Tex. Fin. Code Ann. § 347.402. If the conditions are met, subsection (a) provides that the property owner "has a *possessory lien* that is not subject to Section 347.401 to secure rental charges." *Id.* § 347.402(a) (emphasis added). In turn, subsection (b) of section 347.402 provides that "[t]he *possessory lien* secures rental charges that begin to accrue" and sets forth a methodology for determining that date. *Id.* § 347.402(b). Similarly, subsection (c) establishes "[t]he maximum daily rental charge that is secured by the *possessory lien*." *Id.* § 347.402 (c) (emphases added).

A "possessory lien" is a type of claim or security interest in specific property that permits a creditor to take and retain possession of the property until a debt or obligation is satisfied. *See* Black's Law Dictionary 1008, 425 (9th ed. 2009) (defining "possessory lien" as "[a] lien allowing the creditor to keep possession of the encumbered property until the debt is satisfied" and "lien creditor" as "[a] creditor whose claim is secured by a lien on the debtor's property"). Thus, section 347.402 grants a property owner a claim or security interest in a manufactured home—in derogation of the general rule in section 347.401 giving the creditor priority—that permits the owner to take and retain possession of the home until the owner is paid the rental charges provided under subsections (b) and (c). *See* Tex. Fin. Code Ann. § 347.402. The nature and function of the possessory lien is further illustrated by section 347.404, which explicitly prohibits a property owner not having "a possessory lien that has priority under Section 347.402" from "refus[ing] to

8

allow a creditor to repossess and move the manufactured home" and imposes liability on a property owner "who unlawfully refuses to allow the creditor to repossess and move the manufactured home." *Id.* § 347.404.

While creating a "possessory lien" against specific *property*—the manufactured home—section 347.402 does not purport to create a cause of action against or impose liability upon the creditor or any other specific *person* for the unpaid rental amounts secured by the lien. *See id.* § 347.402. Section 347.402 thus stands in contrast to section 347.404, in which the legislature made "[a]n owner of real property who unlawfully refuses to allow the creditor to repossess and move the manufactured home liable to the creditor" for specified damages, fees, and costs. *Id.* § 347.404; *see also Shook*, 304 S.W.3d at 917 (we read every word, phrase, and expression in statute as if it were deliberately chosen, and likewise presume that words excluded from statute are done so purposefully).

In contending that subchapter I creates a cause of action imposing personal liability on the creditor for the rental charges determined under section 347.402(b) and (c), Circle N urges that section 347.403, when read in conjunction with section 347.402, evidences legislative intent to create a cause of action whereby property owners can recover rental charges from creditors. It emphasizes that section 347.003 states that "[i]n addition to *the recovery of the rental charges*," a property owner "who is required to retain legal counsel to recover the amounts subject to the possessory lien under Section 347.402 " can recover "*other actual damages*," attorney's fees, and court costs. *See id.* § 347.403 (emphases added). By equating the "rental charges" with "actual damages" and authorizing their "recovery," Circle N reasons, the legislature contemplated

9

a cause of action whereby property owners could recover rental charges from creditors as damages. We disagree.

As in section 347.402, the legislature in section 347.403 did not purport to create a claim or remedy against creditors or any particular person. Instead, section 347.403 contemplates a proceeding in which the property owner enforces his or her possessory lien against the manufactured home. *See id.* § 347.403 (" the owner of real property who is required to retain legal counsel to recover the amounts subject to the possessory lien under Section 347.402"). In this way, section 347.403 corresponds to section 347.402, which creates a possessory lien against the *property*—the manufactured home, wherever it might be—rather than a particular party. *Cf. id.* § 347.404.

But, Circle N further asserts, subchapter I must create a cause of action against creditors for unpaid rentals because if it were otherwise, it would provide no protection for the property owner's interests despite the legislature's obvious concern for those interests. In construing statutes, however, "[w]e do not imply a right of enforcement just because a person has suffered harm from the violation of a statute; we look to the intent of the Legislature as expressed in the language of the statute." *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, No. 05-0729, 2009 Tex. LEXIS 114, at *13 (Tex. Mar. 27, 2009, reh'g granted) (citing *Brown v. DeLaCruz*, 156 S.W.3d 560, 567 (Tex. 2004)). Circle N focuses on the requirement that a creditor must "repossess" the manufactured home in order for the "possessory lien" to arise. *See* Tex. Fin. Code Ann. § 347.402(a)(1). "Repossession," in Circle N's view, refers to the creditor's act of taking actual physical possession of the manufactured home and moving it off the property. Consequently, Circle N urges, the

10

property owner's "possessory lien" created by "repossession" would "evaporate" or become unenforceable at the very same instant that section 347.402(a) says it would arise. The legislature could not possibly have intended to protect property owners with a "possessory lien" that is a nullity, Circle N reasons. *See* Tex. Gov't Code Ann. § 311.021(2), (3) (we presume that "the entire statute is intended to be effective" and that "a just and reasonable result is intended"); *see also Entergy Gulf States, Inc.*, 282 S.W.3d at 437 (recognizing "absurd results" limitation on literal reading of statutory text where legislature could not possibly have intended such interpretation). We disagree with both Circle N's underlying premise and the implications it derives for our construction of subchapter I.

Leaving aside whether the legislature intended the narrow definition of "repossession" in section 347.402(a)(1) that Circle N proposes,[3] Circle N's argument is premised on an erroneous assumption that the possessory lien created by the statute would automatically become ineffective if the manufactured home were removed from the owner's property by the creditor or third party. To the contrary, a possessory lien, as a general principle, is not lost by the bare fact that another person removed or took possession of the property; instead, possession must be *voluntarily* relinquished by the lienholder. *See Garcia v. Rutledge*, 649 S.W.2d 307, 311 (Tex. App.—Amarillo 1982, no writ) (explaining that right to statutory posessory mechanics' lien is lost upon voluntary, non-fraudulent delivery of vehicle to owner). This general principle must inform our assessment of

---

[3] The district court concluded that "[b]y making sales to third-party purchasers of the manufactured homes while they remained on the property of [Circle N], Green Tree Servicing, L.L.C. exercised dominion and control over the manufactured homes . . . [and] constituted repossession of the manufactured homes within the meaning of §347.401(a)(1) of the Texas Finance Code." Green Tree similarly argues that it "repossessed" each home when it began attempting to sell them. We need not determine which event constituted "repossession."

the legislature's intent in section 347.402. *See Acker*, 790 S.W.2d at 301 (we assume that legislature was aware of background law and acted with reference to it when enacting a statute).[4] Moreover, the text of section 347.402 explicitly reflects that the legislature contemplated that the possessory lien would be effective in instances where the manufactured home had already been removed from the owner's property. *See* Tex. Fin. Code Ann. § 347.402(a) ("The owner of the real property on which a manufactured home is *or has been* located . . . has a possessory lien . . . .") (emphasis added); *see also id.* § 347.401 (stating the general rule that "a lien or charge against the manufactured home for unpaid rental of the real property on which the manufactured home is *or has been located*" is subordinate to the creditor's rights) (emphasis added). In short, we cannot agree with Circle N's rationale for construing section 347.402 to provide a remedy appearing nowhere in the provision's text. *See T.C.R. v. Bell County Dist. Attorney's Office*, 305 S.W.3d 661, 671 (Tex. App.—Austin 2009, no pet.).

We conclude that the legislature did not create a cause of action in subchapter I through which Circle N could recover personally from Green Tree for unpaid rental amounts. Circle N emphasizes various perceived inequities and practical difficulties it faced in enforcing its possessory liens where, as here, the creditor sells the manufactured homes in place to third-party purchasers. Circle N complains that it had no practicable means to determine that Green Tree had sold the homes, who the third-party purchasers were, or that the purchasers would be removing

---

[4] In fact, the district court made findings that Circle N had not voluntarily surrendered possession of the manufactured homes to Green Tree or the third-party purchasers who removed them. It similarly concluded that the homes' removal by their third-party purchasers did not constitute voluntary delivery.

12

the homes from Circle N's property. Circle N further insinuates that Green Tree opted to sell the manufactured homes in place in a calculated attempt to avoid Circle N's possessory lien, an allegation Green Tree denies.[5] Whatever merit these complaints might have, we are constrained, first, by the narrowness of Circle N's claim for relief. Both in the district court and on appeal, Circle N has relied exclusively on a purported cause of action under subchapter I whereby Green Tree is made personally liable for the unpaid rentals. We express no opinion regarding whether Circle N might have had any other statutory or common-law remedies against Green Tree or other parties in regard to the seven manufactured homes at issue, as that question is not before us. More importantly, we are further constrained by the words the legislature has chosen in subchapter I, and any remedy from the consequences of the legislature's choices must lie in that governmental branch rather than this one. *See T.C.R.*, 305 S.W.3d at 672 (quoting *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920) ("Courts . . . must take statutes as they find them. . . . They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law . . . .")). We sustain Green Tree's first through fourth issues.

In its fifth issue, Green Tree challenges the sufficiency of the evidence supporting the district court's findings and conclusions that the third-party purchasers of each manufactured home acted as Green Tree's agents with respect to removing the home from Circle N's property. In its sixth and final issue, Green Tree complains about the district court's calculation of rentals for two of

---

[5] Among other things, Green Tree observes that its sales agreements included language purporting to make the purchaser responsible for any unpaid rentals.

the homes where, it asserts, "Circle N obtained Justice Court judgments which allowed Circle N to have the homes removed at no cost to Circle N." Having sustained Green Tree's first four issues, entitling it to reversal and rendition of a take-nothing judgment, we need not reach these remaining issues. *See* Tex. R. App. P. 47.1.

We reverse the district court's judgment and render judgment that Circle N take nothing on its claims against Green Tree.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Reversed and Rendered

Filed:   November 18, 2010

14