# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00406-CV

**Gary S. Bagelman, Appellant**

**v.**

**Barbara L. Peach, Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-09-013820, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Residential Property Owners Protection Act, codified in chapter 209 of the property code, "does not apply to a condominium development governed by Chapter 82" of the property code, the Uniform Condominium Act. Tex. Prop. Code Ann. § 209.003(d) (West Supp. 2010); *see id.* § 82.001 (West 2007). Both acts create a right of redemption on the part of an owner in the event that an owners' association forecloses on a lien for nonpayment of assessments, but the right created by chapter 82 is narrower than that created by chapter 209. *See id.* §§ 82.113 (West 2007), 209.011 (West Supp. 2010). The principal issue presented in this appeal is whether a condominium owner may invoke a right of redemption under chapter 209 where chapter 82 would not allow redemption under the specific circumstances of the case. We conclude that the statutory text plainly provides that the condominium owner's right of redemption, if any, is governed by chapter 82, not chapter 209, and that the condominium owner has no right of

redemption because chapter 82 does not provide one under the circumstances here. Because the county court at law rendered a judgment predicated on a contrary legal conclusion, we must reverse.

**BACKGROUND**

The condominium unit in dispute is unit 219 of the Dry Creek West Condominiums, located in Austin. The unit is governed by recorded condominium declarations that are administered by the Dry Creek West Owners Association, Inc. (the Association). Appellee Barbara L. Peach purchased unit 219 in 1982 and has resided there since 1998. Appellant Gary S. Bagelman claims title to and right of possession in unit 219 by virtue of an October 2009 Assessment Lien Deed reciting that an appointed substituted trustee, on the Association's behalf, had conveyed the unit to Bagelman at a public non-judicial foreclosure sale to foreclose the Association's lien securing payment of various assessments remaining unpaid by Peach. *See* Tex. Prop. Code Ann. § 82.113(a) (granting condominium owners' association lien on unit to secure the amount of assessments unpaid by the owner). On November 9, 2009, Bagelman served Peach with an eviction notice requesting her to vacate the unit on or before November 14.[1] It is undisputed that Peach did not vacate the unit. Consequently, Bagelman brought a forcible-detainer action against Peach in justice court. *See* Tex. Prop. Code Ann. § 24.002 (a) (West 2000). The justice court rendered judgment awarding Bagelman possession of the unit.

---

[1] The Assessment Lien Deed contained a limited contractual right of redemption that would have allowed Peach to redeem the property for $13,033 if she had tendered payment in full to Bagelman by 2:16 p.m. on November 5, 2009. There is no contention that Peach attempted to exercise this right of redemption. Instead, as explained below, Peach has relied solely on the assertion that chapter 209 of the property code provides her a right of redemption.

2

Peach took a de novo appeal of the justice court's judgment to the county court at law. *See* Tex. R. Civ. P. 749; *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 433-34 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (describing forcible-detainer actions). At trial before the county court at law, Bagelman introduced evidence of his title to and right of possession in the unit, including copies of the recorded Assessment Lien Deed and his notice to Peach to vacate. In response, Peach acknowledged that she had refused to vacate the unit but, over objection, presented evidence premised on the existence of a right to redemption under the Texas Residential Property Owners Protection Act, chapter 209 of the property code, including that Peach had attempted to exercise such a right with Bagelman and the amounts Peach would be obligated to pay to exercise such a right. *See* Tex. Prop. Code Ann. § 209.011.[2] Following trial, the county court at law rendered judgment that "possession shall be retained" by Peach and denying Bagelman possession. This appeal ensued.

## DISCUSSION

Although findings of fact and conclusions of law were neither prepared nor requested, on this record the county court at law's judgment must necessarily rest upon the legal conclusion that Peach possesses a right of redemption under chapter 209 of the property code that would overcome

---

[2] However, the county court at law sustained Bagelman's objection to evidence Peach sought to introduce that went to the validity of the foreclosure sale. *See* Tex. R. Civ. P. 746 (in forcible detainer cases, "the only issue shall be as to the right to actual possession; and the merits of the title shall not be adjudicated"); *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 433-34 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (sole issue to be determined in forcible-detainer action is right to immediate possession).

Bagelman's title and right of possession in unit 219.**³**  Bagelman brings four issues challenging both the legal and factual bases for that conclusion.  He first argues that, as a matter of statutory construction, chapter 209 of the property code does not apply to unit 219 because the chapter explicitly excludes a "condominium development governed by [property code] Chapter 82," and, in his view, chapter 82 governs the Dry Creek West Condominiums at least with respect to any right of redemption Peach claims.  Under chapter 82, Bagelman adds, Peach possesses no right of redemption.  In his third and fourth issues, Bagelman complains that even if chapter 209 otherwise would apply, the county court at law erred in rendering its judgment because Peach failed to plead right of redemption as an affirmative defense and there was no evidence that she ever complied with statutory prerequisites or actually offered funds to redeem the property.  We need only address Bagelman's first two issues.**⁴**

---

**³**  In fact, although such comments do not control our standard and scope of review as a technical matter, the reporter's record reflects that the county court at law indicated a view that chapter 209 applied rather than the chapter 82 provisions on which Bagelman relies.

In addition to joining issue with Bagelmen regarding chapter 209's applicability, Peach, who is pro se on appeal, attempts to raise various complaints regarding the validity of the underlying foreclosure sale and whether the Association's assessments were "substantiated."  These complaints were not preserved in the county court at law and, indeed, were beyond that court's jurisdiction to consider in a forcible-detainer action.  *See* Tex. R. Civ. P. 746; *Salaymeh v. Plaza Centro, LLC*, 264 S.W3d 431, 435 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Hong Kong Dev., Inc.*, 229 S.W.3d at 434; *see also Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978) (pro se litigants must comply with applicable procedural rules, or else they would be given unfair advantage).  We express no opinion regarding the merits of these complaints.

**⁴**  Peach has filed a motion to dismiss Bagelman's appeal on the basis that he did not timely perfect his appeal.  The record reflects that, to the contrary, the judgment in the county court at law was signed on March 31, 2010; that Bagelman timely filed a motion for new trial on April 23, which served to extend his appellate deadline until ninety days after the date of the judgment, June 29; and that Bagelman timely filed his notice of appeal in the county court at law on the eighty-ninth day, June 28.  *See* Tex. R. App. P. 26.1(a); Tex. R. Civ. P. 329b(a).  Peach asserts that Bagelman cannot

Our disposition of these controlling issues turns on construction of the property code. Statutory construction presents a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the Legislature's intent. *See id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). We consider the words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or

---

appeal because he did not "have a bond," but the current appellate rules do not require an appeal bond to invoke our jurisdiction, only a timely notice of appeal. *See* Tex. R. App. P. 25.1; *In re J.A.*, 53 S.W.3d 869, 872 (Tex. App.—Dallas 2001, no pet.) (noting 1997 repeal of Tex. R. App. P. 41(a)(1), which required filing of bond, cash, or affidavit in lieu of bond to perfect appeal). Because Bagelman timely perfected his appeal, we overrule Peach's motion.

Peach also complains in her dismissal motion that we granted Bagelman's first motion for an extension of time to file his brief without affording her an opportunity to oppose it. Unlike the case with most other motions, the appellate rules do not require us to afford parties an opportunity to oppose a motion to extend time to file a brief, *see* Tex. R. App. P. 10.3(a)(1), and we generally grant first extensions of briefing deadlines as a matter of course. To the extent Peach's complaint can be construed as a motion to reconsider our order granting the extension, *see id.* R. 10.3(b), we overrule it.

Finally, in her brief, Peach asserts that section 24.007 of the property code bars Bagelman's appeal. Section 24.007 states that "[a] final judgment of a county court in an eviction suit may not be appealed on the issue of possession unless the premises in question are being used for residential purposes only." Tex. Prop. Code Ann. § 24.007 (West 2000). Peach argues that because Bagelman has never lived in unit 219, *his* use cannot be "residential." However, it remains undisputed that *Peach* has used—and continues to use—unit 219 for residential purposes only. Consequently, section 24.007 does not bar Bagelman's appeal.

5

unless such a construction leads to absurd results. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly"). We also presume that the Legislature was aware of the background law and acted with reference to it. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). We further presume that the Legislature selected statutory words, phrases, and expressions deliberately and purposefully. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.). Our analysis of the statutory text may also be informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005), and consideration of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, "common law or former statutory provisions, including laws on the same or similar subjects," "consequences of a particular construction," and the enactment's "title." *Id.* § 311.023(1)-(5), (7) (West 2005). However, only when the statutory text is ambiguous "do we 'resort to rules of construction or extrinsic aids.'" *Entergy Gulf States, Inc.*, 282 S.W.3d at 437 (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)).

Chapter 209 of the property code provides that

6

[t]he owner of property in a residential subdivision . . . may redeem the property from any purchaser at a sale foreclosing a property owners' association's assessment lien not later than the 180th day after the date the association mails written notice of the sale to the owner and the lienholder under Section 209.010.

Tex. Prop. Code Ann. § 209.011(b).  The chapter defines "residential subdivision" as

a subdivision, planned unit development, townhouse regime, or similar planned development in which all land has been divided into two or more parts and is subject to restrictions that:

(A)      limit a majority of the land subject to the dedicatory instruments, excluding streets, common areas, and public areas, to residential use for single-family homes, townhomes, or duplexes only;

(B)      are recorded in the real property records of the county in which the residential subdivision is located; and

(C)      require membership in a property owners' association that has authority to impose regular or special assessments on the property in the subdivision.

Id. § 209.002(9) (West 2007).  A "property owners' association," in turn, is an incorporated or unincorporated association that:

(A)      is designated as the representative of the owners of property in a residential subdivision;

(B)      has a membership primarily consisting of the owners of the property covered by the dedicatory instrument for the residential subdivision; and

(C)      manages or regulates the residential subdivision for the benefit of the owners of property in the residential subdivision.

Id. § 209.002(7) (West 2007).  Chapter 209 is made applicable only to "a residential subdivision that is subject to restrictions or provisions in a declaration that authorize the property owners' association

7

to collect regular or special assessments on all or a majority of the property in the subdivision," and "a property owners' association that requires mandatory membership in the association for all or a majority of the owners of residential property within the subdivision subject to the association's dedicatory instruments" without respect to whether that entity "is designated as a 'homeowners' association,' 'community association,' or similar designation in the restrictions or dedicatory instrument." *Id.* § 209.003(a)-(c) (West Supp. 2010). However, excluded from the chapter's coverage is "a condominium development governed by Chapter 82." *Id.* § 209.003(d).

Chapter 82 of the property code is the Uniform Condominium Act. *See id.* § 82.001. Generally speaking, chapter 82 applies to "all commercial, industrial, residential, and other types of condominiums in this state for which the declaration is recorded on or after January 1, 1994," while condominiums whose declarations were recorded prior to that date are governed by chapter 81 of the code, the Condominium Act. *Id.* § 82.002(a), (d); *see id.* §§ 81.001, .011(a) (West 2007). It is undisputed that the Dry Creek West Condominium declaration was recorded before January 1, 1994, such that chapter 81, rather than chapter 82, would generally apply. However, the Legislature has made certain enumerated provisions of chapter 82 applicable to condominium regimes whose declarations were recorded prior to January 1, 1994, and would thus otherwise be governed by chapter 81. *Id.* § 82.002(c); *see id.* § 81.0011(b) ("[a] condominium regime created before January 1, 1994, to which this chapter applies is also governed by Chapter 82 as provided by Section 82.002"). Among the chapter 82 provisions that are specifically made applicable to what are otherwise chapter 81 condominium regimes is section 82.113. *Id.* § 82.002(c). Section 82.113, among other things, provides the owners' association a lien on a condominium unit, rents, and

8

insurance proceeds to secure the amount of an owner's unpaid assessments, *see id.* § 82.113(a),[5]

establishes the priority of such liens, *see id.* § 82.113(b), provides that such liens are created and

perfected by recording the declarations unless otherwise provided in the declarations, *see id.*

§ 82.113(c), and provides that a unit owner's acquisition of the unit grants the association the power

of sale in connection with its lien, *see id.* § 82.113(d), which it may exercise through judicial or non-

judicial foreclosure, *see id.* § 82.113(e). Section 82.113 further provides that an association "may

bid for and purchase the unit at foreclosure sale as a common expense," and "may own, lease,

encumber, exchange, sell, or convey a unit," *see id.* § 82.113(f), subject to the following right of

redemption on the part of the unit owner:

> The owner of a unit used for residential purposes *and purchased by an association* at a foreclosure sale of the association's lien for assessments may redeem the unit not later than the 90th day after the date of the foreclosure sale. To redeem the unit, the owner must pay to the association all amounts due the association at the time of the foreclosure sale, interest from the date of foreclosure sale to the date of redemption at the rate provided by the declaration for delinquent assessments, reasonable attorney's fees and costs incurred by the association in foreclosing the lien, any assessment levied against the unit by the association after the foreclosure sale, and any reasonable cost incurred by the association as owner of the unit, including costs of maintenance and leasing. On redemption, the association shall execute a deed to the redeeming unit owner. The exercise of the right of redemption is not effective against a subsequent purchaser or lender for value without notice

---

[5] Section 82.003 of the Texas Property Code defines "association" as "the unit owners' association organized under Section 82.101." Section 82.101 is not one of the sections that the Legislature has made applicable to condominiums for which a declaration is recorded before January 1, 1994, *see* Tex. Prop. Code Ann. § 82.002 (c) (West 2007), but the term "association" is used in chapter 81, the Condominium Act, *see id.* § 81.104 (e) (West 2007), although it is not defined, *see id.* § 81.002 (West 2007). Neither party suggests that the unit owners' association that foreclosed on Peach's property is not an "association" for the purposes of section 82.113, which provides the unit owners' association a lien for assessments and allows the association to foreclose on the lien and bid on the unit at foreclosure. *See id.* § 82.113 (a)-(f) (West 2007).

of the redemption after the redemption period expires unless the redeeming unit owner records the deed from the association or an affidavit stating that the owner has exercised the right of redemption. A unit that has been redeemed remains subject to all liens and encumbrances on the unit before foreclosure. All rents and other income collected from the unit by the association from the date of foreclosure sale to the date of redemption belong to the association, but the rents and income shall be credited against the redemption amount. An association purchasing a unit at a sale foreclosing its lien may not transfer ownership of the unit during the redemption period to a person other than a redeeming owner.

*Id.* § 82.113(g) (emphasis added). Unlike the right of redemption under chapter 209, chapter 82 does not create a right of redemption against a party other than an association who purchases a condominium unit at a foreclosure sale. *See id.* § 82.113.

Construing the foregoing provisions of chapters 209, 81, and 82 together, Bagelman contends that section 82.113, not chapter 209, governs whether Peach has any right of redemption in her unit. And the right of redemption under section 82.113, Bagelman observes, arises only in the event that the unit is purchased at a foreclosure sale by the unit owners' association, not where, as here, the unit is purchased by a third party. The text of section 82.113, subsection (g) supports Bagelman's assertion—it allows an owner of a unit "used for residential purposes *and purchased by an association* at a foreclosure sale of the association's lien for assessments" to redeem the property within ninety days—as does the context in which subsection (g) appears, immediately following a provision that authorizes associations to purchase units at foreclosure sales and "own, lease, encumber, exchange, sell, or convey a unit." *Id.* § 82.113(f), (g) (emphasis added). Neither subsection (g) nor section 82.113 as a whole mentions third-party purchasers, except insofar as (g) provides that the right of redemption is "not effective against a subsequent purchaser or lender for value without notice of the redemption after the redemption period expires unless the redeeming unit

10

owner records the deed from the association or an affidavit stating that the owner has exercised the right of redemption." *See id.* § 82.113(g).

In response, Peach first argues that chapter 82 is inapplicable to the Dry Creek West Condominiums because they are governed by chapter 81. While Peach is correct to the extent that condominiums whose declarations were recorded prior to January 1, 1994, like the Dry Creek West Condominiums, are generally governed by chapter 81 rather than 82, Peach overlooks that the Legislature has expressly made section 82.113 applicable to pre-1994 condominium regimes that would otherwise be governed by chapter 81. *Id.* §§ 81.0011(b), 82.002(c). Consequently, the Dry Creek West Condominiums are plainly subject to section 82.113.

Peach further suggests that because section 82.113, even if otherwise applicable, does not provide her a right of redemption as against Bagelman, the right of redemption created by section 209.011 applies as a sort of default. Assuming without deciding that the Dry Creek West Condominiums would constitute a "residential subdivision" subject to chapter 209, Peach's construction would conflict with the plain language of section 209.003, which provides that the chapter "does not apply to a condominium development governed by chapter 82." *Id.* § 209.003(d). Chapter 209 does not, as Peach's construction would imply, only exclude "a condominium development *to the extent it is* governed by chapter 82" or where "*a specific right or duty of* a condominium development is governed by chapter 82." Rather, the Legislature has plainly excluded a "condominium development governed by chapter 82." The Dry Creek West Condominiums, as previously indicated, are "a condominium development governed by chapter 82"—chapter 82 governs, among other things, the creation of a lien on the part of the owners' association to secure

11

unpaid assessments and an owner's rights, including the right of redemption, in the event that lien is foreclosed. We are to presume that the Legislature chose its words carefully and deliberately, and we must give those words effect. *DeQueen*, 325 S.W.3d at 635; *Kappus v. Kappus*, 284 S.W.3d 831, 836 (Tex. 2009); *Shook*, 304 S.W.3d at 917; *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied). Consequently, chapter 209, by its own terms, does not apply and provides no right of redemption to Peach.

The Dallas Court of Appeals has reached the same conclusion on similar facts. In *Duarte v. Disanti*, Duarte had purchased a unit in a condominium development that had been created in 1980. 292 S.W.3d 733, 734 (Tex. App.—Dallas 2009, no pet.). He failed to pay certain assessments, and his property was sold at foreclosure to Disanti. *Id.* Duarte sued Disanti because Disanti refused to allow Duarte to redeem the condominium pursuant to chapter 209 of the property code. *Id.* at 735. In affirming a summary judgment in favor of Disanti, the court explained that section 82.113, which provides an assessment lien to unit owners' associations, allows them to foreclose on the lien, and provides owners a limited right of redemption, applies to all condominiums. *Id.* Because "[a]ll condominiums in the State of Texas are governed by the redemption provisions of chapter 82," the court concluded that "under the plain terms of the Property Owners Protection Act" chapter 209 did not apply to Duarte's condominium. *Id.*

The Legislature enacted chapter 209 when chapter 82 had already been in effect for eight years. *See* Act of June 14, 2001, 77th Leg., R.S., ch. 926, § 1, 2001 Tex. Gen. Laws 1857, 1857-63, *codified at* Tex. Prop. Code Ann. §§ 209.001-.011; Act of May 22, 1993, 73d Leg., R.S., ch. 244, § 1, 1993 Tex. Gen. Laws 521, 521-47, *codified at* Tex. Prop. Code Ann. §§ 82.001-.164.

12

Had the Legislature wanted to apply the same rules to condominiums and other residential properties, it could have done so. Instead, it expressly provided that chapter 209 would not apply to condominiums governed by chapter 82, thereby leaving the Uniform Condominium Act—and any condominium unit governed by it—unaffected by chapter 209.

We sustain Bagelman's first and second issues, and need not reach the others. *See* Tex. R. App. P. 47.1.

**CONCLUSION**

Because chapter 82 provides Peach no right of redemption, and because chapter 209's right of redemption does not apply to Peach's condominium unit, we reverse the county court at law's judgment and render judgment granting possession of unit 219 to Bagelman.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Henson

Reversed and Rendered

Filed: June 16, 2011