TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00406-CV






Gary S. Bagelman, Appellant


v.


Barbara L. Peach, Appellee






FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY

NO. C-1-CV-09-013820, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING




 M E M O R A N D U M O P I N I O N


 The Texas Residential Property Owners Protection Act, codified in chapter 209 of
the property code, "does not apply to a condominium development governed by Chapter 82"
of the property code, the Uniform Condominium Act. Tex. Prop. Code Ann. § 209.003(d)
(West Supp. 2010); see id. § 82.001 (West 2007). Both acts create a right of redemption on the
part of an owner in the event that an owners' association forecloses on a lien for nonpayment
of assessments, but the right created by chapter 82 is narrower than that created by chapter 209.
See id. §§ 82.113 (West 2007), 209.011 (West Supp. 2010). The principal issue presented in this
appeal is whether a condominium owner may invoke a right of redemption under chapter 209 where
chapter 82 would not allow redemption under the specific circumstances of the case. We conclude
that the statutory text plainly provides that the condominium owner's right of redemption, if any,
is governed by chapter 82, not chapter 209, and that the condominium owner has no right of
redemption because chapter 82 does not provide one under the circumstances here. Because the
county court at law rendered a judgment predicated on a contrary legal conclusion, we must reverse. 

 

BACKGROUND

 The condominium unit in dispute is unit 219 of the Dry Creek West Condominiums,
located in Austin. The unit is governed by recorded condominium declarations that are administered
by the Dry Creek West Owners Association, Inc. (the Association). Appellee Barbara L. Peach
purchased unit 219 in 1982 and has resided there since 1998. Appellant Gary S. Bagelman claims
title to and right of possession in unit 219 by virtue of an October 2009 Assessment Lien Deed
reciting that an appointed substituted trustee, on the Association's behalf, had conveyed the unit to
Bagelman at a public non-judicial foreclosure sale to foreclose the Association's lien securing
payment of various assessments remaining unpaid by Peach. See Tex. Prop. Code Ann. § 82.113(a)
(granting condominium owners' association lien on unit to secure the amount of assessments unpaid
by the owner). On November 9, 2009, Bagelman served Peach with an eviction notice requesting
her to vacate the unit on or before November 14. (1) It is undisputed that Peach did not vacate the unit.
Consequently, Bagelman brought a forcible-detainer action against Peach in justice court. See
Tex. Prop. Code Ann. § 24.002 (a) (West 2000). The justice court rendered judgment awarding
Bagelman possession of the unit.

 Peach took a de novo appeal of the justice court's judgment to the county court at law.
See Tex. R. Civ. P. 749; Hong Kong Dev., Inc. v. Nguyen, 229 S.W.3d 415, 433-34
(Tex. App.--Houston [1st Dist.] 2007, no pet.) (describing forcible-detainer actions). At trial before
the county court at law, Bagelman introduced evidence of his title to and right of possession in the
unit, including copies of the recorded Assessment Lien Deed and his notice to Peach to vacate. In
response, Peach acknowledged that she had refused to vacate the unit but, over objection, presented
evidence premised on the existence of a right to redemption under the Texas Residential Property
Owners Protection Act, chapter 209 of the property code, including that Peach had attempted to
exercise such a right with Bagelman and the amounts Peach would be obligated to pay to exercise
such a right. See Tex. Prop. Code Ann. § 209.011. (2) Following trial, the county court at law rendered
judgment that "possession shall be retained" by Peach and denying Bagelman possession. This
appeal ensued.


DISCUSSION

 Although findings of fact and conclusions of law were neither prepared nor requested,
on this record the county court at law's judgment must necessarily rest upon the legal conclusion that
Peach possesses a right of redemption under chapter 209 of the property code that would overcome
Bagelman's title and right of possession in unit 219. (3) Bagelman brings four issues challenging
both the legal and factual bases for that conclusion. He first argues that, as a matter of statutory
construction, chapter 209 of the property code does not apply to unit 219 because the chapter
explicitly excludes a "condominium development governed by [property code] Chapter 82," and,
in his view, chapter 82 governs the Dry Creek West Condominiums at least with respect to any
right of redemption Peach claims. Under chapter 82, Bagelman adds, Peach possesses no right of
redemption. In his third and fourth issues, Bagelman complains that even if chapter 209 otherwise
would apply, the county court at law erred in rendering its judgment because Peach failed to plead
right of redemption as an affirmative defense and there was no evidence that she ever complied
with statutory prerequisites or actually offered funds to redeem the property. We need only address
Bagelman's first two issues. (4)

 Our disposition of these controlling issues turns on construction of the property code.
Statutory construction presents a question of law that we review de novo. See State v. Shumake,
199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect
to the Legislature's intent. See id. We seek that intent "first and foremost" in the statutory text.
Lexington Ins. Co. v. Strayhorn, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is
determinative of that intent." Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437
(Tex. 2009) (op. on reh'g) (citing Shumake, 199 S.W.3d at 284; Alex Sheshunoff Mgmt. Servs.
v. Johnson, 209 S.W.3d 644, 651-52 (Tex. 2006)). We consider the words in context, not in
isolation. State v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the
text, unless a different meaning is supplied by legislative definition or is apparent from context, or
unless such a construction leads to absurd results. See Entergy Gulf States, Inc., 282 S.W.3d at 437;
City of Rockwall v. Hughes, 246 S.W.3d 621, 625-26 (Tex. 2008); see also Tex. Gov't Code Ann.
§ 311.011 (West 2005) ("[w]ords and phrases shall be read in context and construed according to
the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical
or particular meaning, whether by legislative definition or otherwise, shall be construed
accordingly"). We also presume that the Legislature was aware of the background law and acted
with reference to it. See Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301 (Tex. 1990). We
further presume that the Legislature selected statutory words, phrases, and expressions deliberately
and purposefully. See Texas Lottery Comm'n v. First State Bank of DeQueen, 325 S.W.3d 628,
635 (Tex. 2010); Shook v. Walden, 304 S.W.3d 910, 917 (Tex. App.--Austin 2010, no pet.). Our
analysis of the statutory text may also be informed by the presumptions that "the entire statute is
intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann.
§ 311.021(2), (3) (West 2005), and consideration of such matters as "the object sought to be
attained," "circumstances under which the statute was enacted," legislative history, "common law
or former statutory provisions, including laws on the same or similar subjects," "consequences of
a particular construction," and the enactment's "title." Id. § 311.023(1)-(5), (7) (West 2005).
However, only when the statutory text is ambiguous "do we 'resort to rules of construction or
extrinsic aids.'" Entergy Gulf States, Inc., 282 S.W.3d at 437 (quoting In re Estate of Nash,
220 S.W.3d 914, 917 (Tex. 2007)).

 Chapter 209 of the property code provides that 


[t]he owner of property in a residential subdivision . . . may redeem the property from
any purchaser at a sale foreclosing a property owners' association's assessment lien
not later than the 180th day after the date the association mails written notice of the
sale to the owner and the lienholder under Section 209.010.



Tex. Prop. Code Ann. § 209.011(b). The chapter defines "residential subdivision" as 


a subdivision, planned unit development, townhouse regime, or similar planned
development in which all land has been divided into two or more parts and is subject
to restrictions that:


(A) limit a majority of the land subject to the dedicatory instruments, excluding
streets, common areas, and public areas, to residential use for single-family
homes, townhomes, or duplexes only; 


(B) are recorded in the real property records of the county in which the residential
subdivision is located; and 


(C) require membership in a property owners' association that has authority to
impose regular or special assessments on the property in the subdivision.



Id. § 209.002(9) (West 2007). A "property owners' association," in turn, is an incorporated or
unincorporated association that: 

(A) is designated as the representative of the owners of property in a residential
subdivision; 


(B) has a membership primarily consisting of the owners of the property covered by the
dedicatory instrument for the residential subdivision; and 


(C) manages or regulates the residential subdivision for the benefit of the owners of
property in the residential subdivision.



Id. § 209.002(7) (West 2007). Chapter 209 is made applicable only to "a residential subdivision that
is subject to restrictions or provisions in a declaration that authorize the property owners' association
to collect regular or special assessments on all or a majority of the property in the subdivision,"
and "a property owners' association that requires mandatory membership in the association for all
or a majority of the owners of residential property within the subdivision subject to the association's
dedicatory instruments" without respect to whether that entity "is designated as a 'homeowners'
association,' 'community association,' or similar designation in the restrictions or dedicatory
instrument." Id. § 209.003(a)-(c) (West Supp. 2010). However, excluded from the chapter's
coverage is "a condominium development governed by Chapter 82." Id. § 209.003(d).

 Chapter 82 of the property code is the Uniform Condominium Act. See id. § 82.001.
Generally speaking, chapter 82 applies to "all commercial, industrial, residential, and other types of
condominiums in this state for which the declaration is recorded on or after January 1, 1994," while
condominiums whose declarations were recorded prior to that date are governed by chapter 81 of
the code, the Condominium Act. Id. § 82.002(a), (d); see id. §§ 81.001, .011(a) (West 2007). It is
undisputed that the Dry Creek West Condominium declaration was recorded before January 1, 1994,
such that chapter 81, rather than chapter 82, would generally apply. However, the Legislature has
made certain enumerated provisions of chapter 82 applicable to condominium regimes whose
declarations were recorded prior to January 1, 1994, and would thus otherwise be governed
by chapter 81. Id. § 82.002(c); see id. § 81.0011(b) ("[a] condominium regime created before
January 1, 1994, to which this chapter applies is also governed by Chapter 82 as provided by
Section 82.002"). Among the chapter 82 provisions that are specifically made applicable to what
are otherwise chapter 81 condominium regimes is section 82.113. Id. § 82.002(c). Section 82.113,
among other things, provides the owners' association a lien on a condominium unit, rents, and
insurance proceeds to secure the amount of an owner's unpaid assessments, see id. § 82.113(a), (5)
establishes the priority of such liens, see id. § 82.113(b), provides that such liens are created and
perfected by recording the declarations unless otherwise provided in the declarations, see id.
§ 82.113(c), and provides that a unit owner's acquisition of the unit grants the association the power
of sale in connection with its lien, see id. § 82.113(d), which it may exercise through judicial or non-judicial foreclosure, see id. § 82.113(e). Section 82.113 further provides that an association "may
bid for and purchase the unit at foreclosure sale as a common expense," and "may own, lease,
encumber, exchange, sell, or convey a unit," see id. § 82.113(f), subject to the following right of
redemption on the part of the unit owner:


The owner of a unit used for residential purposes and purchased by an association
at a foreclosure sale of the association's lien for assessments may redeem the unit
not later than the 90th day after the date of the foreclosure sale. To redeem the unit,
the owner must pay to the association all amounts due the association at the time of
the foreclosure sale, interest from the date of foreclosure sale to the date of
redemption at the rate provided by the declaration for delinquent assessments,
reasonable attorney's fees and costs incurred by the association in foreclosing the
lien, any assessment levied against the unit by the association after the foreclosure
sale, and any reasonable cost incurred by the association as owner of the unit,
including costs of maintenance and leasing. On redemption, the association shall
execute a deed to the redeeming unit owner. The exercise of the right of redemption
is not effective against a subsequent purchaser or lender for value without notice
of the redemption after the redemption period expires unless the redeeming unit
owner records the deed from the association or an affidavit stating that the owner
has exercised the right of redemption. A unit that has been redeemed remains subject
to all liens and encumbrances on the unit before foreclosure. All rents and other
income collected from the unit by the association from the date of foreclosure sale
to the date of redemption belong to the association, but the rents and income shall be
credited against the redemption amount. An association purchasing a unit at a sale
foreclosing its lien may not transfer ownership of the unit during the redemption
period to a person other than a redeeming owner.



Id. § 82.113(g) (emphasis added). Unlike the right of redemption under chapter 209, chapter 82
does not create a right of redemption against a party other than an association who purchases a
condominium unit at a foreclosure sale. See id. § 82.113.

 Construing the foregoing provisions of chapters 209, 81, and 82 together, Bagelman
contends that section 82.113, not chapter 209, governs whether Peach has any right of redemption
in her unit. And the right of redemption under section 82.113, Bagelman observes, arises only in the
event that the unit is purchased at a foreclosure sale by the unit owners' association, not where,
as here, the unit is purchased by a third party. The text of section 82.113, subsection (g) supports
Bagelman's assertion--it allows an owner of a unit "used for residential purposes and purchased
by an association at a foreclosure sale of the association's lien for assessments" to redeem the
property within ninety days--as does the context in which subsection (g) appears, immediately
following a provision that authorizes associations to purchase units at foreclosure sales and "own,
lease, encumber, exchange, sell, or convey a unit." Id. § 82.113(f), (g) (emphasis added). Neither
subsection (g) nor section 82.113 as a whole mentions third-party purchasers, except insofar as (g)
provides that the right of redemption is "not effective against a subsequent purchaser or lender for
value without notice of the redemption after the redemption period expires unless the redeeming unit
owner records the deed from the association or an affidavit stating that the owner has exercised
the right of redemption." See id. § 82.113(g).

 In response, Peach first argues that chapter 82 is inapplicable to the Dry Creek West
Condominiums because they are governed by chapter 81. While Peach is correct to the extent that
condominiums whose declarations were recorded prior to January 1, 1994, like the Dry Creek West
Condominiums, are generally governed by chapter 81 rather than 82, Peach overlooks that the
Legislature has expressly made section 82.113 applicable to pre-1994 condominium regimes
that would otherwise be governed by chapter 81. Id. §§ 81.0011(b), 82.002(c). Consequently, the
Dry Creek West Condominiums are plainly subject to section 82.113.

 Peach further suggests that because section 82.113, even if otherwise applicable,
does not provide her a right of redemption as against Bagelman, the right of redemption created by
section 209.011 applies as a sort of default. Assuming without deciding that the Dry Creek West
Condominiums would constitute a "residential subdivision" subject to chapter 209, Peach's
construction would conflict with the plain language of section 209.003, which provides that the
chapter "does not apply to a condominium development governed by chapter 82." Id. § 209.003(d).
Chapter 209 does not, as Peach's construction would imply, only exclude "a condominium
development to the extent it is governed by chapter 82" or where "a specific right or duty of a
condominium development is governed by chapter 82." Rather, the Legislature has plainly excluded
a "condominium development governed by chapter 82." The Dry Creek West Condominiums, as
previously indicated, are "a condominium development governed by chapter 82"--chapter 82
governs, among other things, the creation of a lien on the part of the owners' association to secure
unpaid assessments and an owner's rights, including the right of redemption, in the event that lien
is foreclosed. We are to presume that the Legislature chose its words carefully and deliberately,
and we must give those words effect. DeQueen, 325 S.W.3d at 635; Kappus v. Kappus, 284 S.W.3d
831, 836 (Tex. 2009); Shook, 304 S.W.3d at 917; USA Waste Servs. of Houston, Inc. v. Strayhorn,
150 S.W.3d 491, 494 (Tex. App.--Austin 2004, pet. denied). Consequently, chapter 209, by its own
terms, does not apply and provides no right of redemption to Peach.

 The Dallas Court of Appeals has reached the same conclusion on similar facts. In
Duarte v. Disanti, Duarte had purchased a unit in a condominium development that had been
created in 1980. 292 S.W.3d 733, 734 (Tex. App.--Dallas 2009, no pet.). He failed to pay certain
assessments, and his property was sold at foreclosure to Disanti. Id. Duarte sued Disanti because
Disanti refused to allow Duarte to redeem the condominium pursuant to chapter 209 of the
property code. Id. at 735. In affirming a summary judgment in favor of Disanti, the court explained
that section 82.113, which provides an assessment lien to unit owners' associations, allows
them to foreclose on the lien, and provides owners a limited right of redemption, applies to all
condominiums. Id. Because "[a]ll condominiums in the State of Texas are governed by the
redemption provisions of chapter 82," the court concluded that "under the plain terms of the Property
Owners Protection Act" chapter 209 did not apply to Duarte's condominium. Id.

 The Legislature enacted chapter 209 when chapter 82 had already been in effect for
eight years. See Act of June 14, 2001, 77th Leg., R.S., ch. 926, § 1, 2001 Tex. Gen. Laws 1857,
1857-63, codified at Tex. Prop. Code Ann. §§ 209.001-.011; Act of May 22, 1993, 73d Leg., R.S.,
ch. 244, § 1, 1993 Tex. Gen. Laws 521, 521-47, codified at Tex. Prop. Code Ann. §§ 82.001-.164. 
Had the Legislature wanted to apply the same rules to condominiums and other residential properties,
it could have done so. Instead, it expressly provided that chapter 209 would not apply to
condominiums governed by chapter 82, thereby leaving the Uniform Condominium Act--and any
condominium unit governed by it--unaffected by chapter 209.

 We sustain Bagelman's first and second issues, and need not reach the others. See
Tex. R. App. P. 47.1.


CONCLUSION

 Because chapter 82 provides Peach no right of redemption, and because chapter 209's
right of redemption does not apply to Peach's condominium unit, we reverse the county court at
law's judgment and render judgment granting possession of unit 219 to Bagelman.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Henson

Reversed and Rendered

Filed: June 16, 2011

1. The Assessment Lien Deed contained a limited contractual right of redemption that
would have allowed Peach to redeem the property for $13,033 if she had tendered payment in full
to Bagelman by 2:16 p.m. on November 5, 2009. There is no contention that Peach attempted
to exercise this right of redemption. Instead, as explained below, Peach has relied solely on the
assertion that chapter 209 of the property code provides her a right of redemption.
2. However, the county court at law sustained Bagelman's objection to evidence Peach
sought to introduce that went to the validity of the foreclosure sale. See Tex. R. Civ. P. 746 (in
forcible detainer cases, "the only issue shall be as to the right to actual possession; and the merits
of the title shall not be adjudicated"); Hong Kong Dev., Inc. v. Nguyen, 229 S.W.3d 415, 433-34
(Tex. App.--Houston [1st Dist.] 2007, no pet.) (sole issue to be determined in forcible-detainer
action is right to immediate possession).
3. In fact, although such comments do not control our standard and scope of review as a
technical matter, the reporter's record reflects that the county court at law indicated a view that
chapter 209 applied rather than the chapter 82 provisions on which Bagelman relies.


 In addition to joining issue with Bagelmen regarding chapter 209's applicability, Peach,
who is pro se on appeal, attempts to raise various complaints regarding the validity of the underlying
foreclosure sale and whether the Association's assessments were "substantiated." These complaints
were not preserved in the county court at law and, indeed, were beyond that court's jurisdiction
to consider in a forcible-detainer action. See Tex. R. Civ. P. 746; Salaymeh v. Plaza Centro, LLC,
264 S.W3d 431, 435 (Tex. App.--Houston [14th Dist.] 2008, no pet.); Hong Kong Dev., Inc.,
229 S.W.3d at 434; see also Mansfield State Bank v. Cohn, 573 S.W.2d 181, 185 (Tex. 1978) (pro se
litigants must comply with applicable procedural rules, or else they would be given unfair
advantage). We express no opinion regarding the merits of these complaints.
4. Peach has filed a motion to dismiss Bagelman's appeal on the basis that he did not timely
perfect his appeal. The record reflects that, to the contrary, the judgment in the county court at law
was signed on March 31, 2010; that Bagelman timely filed a motion for new trial on April 23, which
served to extend his appellate deadline until ninety days after the date of the judgment, June 29; and
that Bagelman timely filed his notice of appeal in the county court at law on the eighty-ninth day,
June 28. See Tex. R. App. P. 26.1(a); Tex. R. Civ. P. 329b(a). Peach asserts that Bagelman cannot
appeal because he did not "have a bond," but the current appellate rules do not require an
appeal bond to invoke our jurisdiction, only a timely notice of appeal. See Tex. R. App. P. 25.1;
In re J.A., 53 S.W.3d 869, 872 (Tex. App.--Dallas 2001, no pet.) (noting 1997 repeal of Tex. R.
App. P. 41(a)(1), which required filing of bond, cash, or affidavit in lieu of bond to perfect appeal).
Because Bagelman timely perfected his appeal, we overrule Peach's motion.


 Peach also complains in her dismissal motion that we granted Bagelman's first motion for an
extension of time to file his brief without affording her an opportunity to oppose it. Unlike the case
with most other motions, the appellate rules do not require us to afford parties an opportunity
to oppose a motion to extend time to file a brief, see Tex. R. App. P. 10.3(a)(1), and we generally
grant first extensions of briefing deadlines as a matter of course. To the extent Peach's complaint
can be construed as a motion to reconsider our order granting the extension, see id. R. 10.3(b),
we overrule it.


 Finally, in her brief, Peach asserts that section 24.007 of the property code bars Bagelman's
appeal. Section 24.007 states that "[a] final judgment of a county court in an eviction suit may not
be appealed on the issue of possession unless the premises in question are being used for residential
purposes only." Tex. Prop. Code Ann. § 24.007 (West 2000). Peach argues that because Bagelman
has never lived in unit 219, his use cannot be "residential." However, it remains undisputed that
Peach has used--and continues to use--unit 219 for residential purposes only. Consequently,
section 24.007 does not bar Bagelman's appeal.
5. Section 82.003 of the Texas Property Code defines "association" as "the unit owners'
association organized under Section 82.101." Section 82.101 is not one of the sections that the
Legislature has made applicable to condominiums for which a declaration is recorded before
January 1, 1994, see Tex. Prop. Code Ann. § 82.002 (c) (West 2007), but the term "association" is
used in chapter 81, the Condominium Act, see id. § 81.104 (e) (West 2007), although it is not
defined, see id. § 81.002 (West 2007). Neither party suggests that the unit owners' association that
foreclosed on Peach's property is not an "association" for the purposes of section 82.113, which
provides the unit owners' association a lien for assessments and allows the association to foreclose
on the lien and bid on the unit at foreclosure. See id. § 82.113 (a)-(f) (West 2007).